John J. Werner, Plaintiff-Appellant, v. International Association of Machinists, a Voluntary Association, P. L. Siemiller, General Vice President, et al., Defendants-Appellees.

Gen. No. 10,904.

Second District.

August 20, 1956.

Rehearing denied October 2, 1956.

Released for publication October 2, 1956.

Charles H. Atwell, of Aurora, and Carbary & Carbary, of Elgin, for plaintiff-appellant; George D. Carbary, of Elgin, of counsel.

Roy J. Solfisburg, Jr., David H. Armstrong, and Robert E. Dolph, all of Aurora, and George W. Christensen, of Chicago, for defendants-appellees.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

On April 2, 1954 John J. Werner filed his verified complaint in the circuit court of Kane County against International Association of Machinists, a voluntary association or union; P. L. Siemiller, the general vice-president of this union; Local Lodge No. 1202 District 108 of said union; Nicholas Bury, president of said Local Lodge No. 1202; and V. J. Mazzacano, individually, and as an officer of said union and the highest officer of said Local No. 1202 and its representative in the Grand Lodge of said union. The defendants appeared and filed a verified motion to dismiss the complaint. This motion was heard on June 24, 1954 and taken under advisement. On July 1, 1954 an order was entered sustaining the motion of defendants to dismiss and granting leave to plaintiff to file an amended complaint within twenty days.

The record discloses that an amended complaint was filed on July 20, 1954, and on July 26, 1954 defendants filed a motion to expunge from the order of July 1, 1954 the portion thereof which granted leave to plaintiff to file an amended complaint in twenty days and to strike the amended complaint from the files. This motion was heard and sustained on the same day and an order entered striking the amended complaint from the files and directing the clerk to strike from his docket the portion of the order of July 1, 1954 which granted leave to the plaintiff to file an amended complaint in twenty days. On the same day, July 26, 1954, an order was entered reciting that plaintiff tendered, in open court, a complaint as amended, that plaintiff submitted a copy thereof to counsel for defendants and moved for leave to file the same. Subsequently this motion was heard and on October 11, 1954 an order was entered denying plaintiff leave to file the tendered amended complaint and rendered judgment dismissing plaintiff's complaint.

Thereafter and on October 19, 1954 notice was served on counsel for defendants that plaintiff would appear

before the trial court on October 22, 1954 and move the court to reconsider this cause and upon such reconsideration, vacate the several orders entered on July 1, 1954, July 26, 1954, and October 11, 1954. In response to this motion, defendants moved to strike the same. On October 22, 1954 these motions were set for hearing for November 9, 1954. A hearing was had which was concluded on February 9, 1955 and the motions were, by the court, taken under advisement. On February 17, 1955 the court announced his decision in open court, overruling plaintiff's motion and entered an order continuing the cause for the preparation of a written order. This written order was entered by the trial court denying plaintiff's motion to vacate the previous orders and rendering judgment in favor of the defendants and against the plaintiff for costs on March 3, 1955. At this same time, the court fixed the amount of an appeal bond and on March 9, 1955 plaintiff filed his notice of appeal to the Supreme Court and on March 12, 1955 the appeal bond was filed.

By his notice of appeal, plaintiff sought to have the Supreme Court reverse (a) that portion of the order of July 1, 1954 dismissing plaintiff's complaint; (b) that portion of the order of July 26, 1954 striking plaintiff's amended complaint from the files and that portion of the same order which struck from the order of July 1, 1954 leave to file said amended complaint; (c) the order of October 11, 1954 dismissing plaintiff's complaint and denying him leave to file an amended complaint; and (d) the order of March 3, 1955 which denied plaintiff's motion to vacate the previous orders and rendered judgment against the plaintiff for costs.

In the Supreme Court, the defendants appeared and filed a motion to dismiss the appeal, or, in the alternative, to transfer this cause to this court. The Supreme Court, without opinion, transferred the cause to this court and on October 29, 1955 appellees filed their brief and argument in this court.

■ Counsel for defendant suggest that the order of October 11, 1954, denying plaintiff leave to file the tendered amended complaint, was a final judgment and this appeal should be dismissed, inasmuch as the notice of appeal was filed on March 9, 1955, which was more than ninety days after the entry of the order of October 11, 1954. There is no merit in this contention. The record discloses that on October 22, 1954 the plaintiff filed his motion to vacate and set aside the order of October 11, 1954. This motion of October 22, 1954 was heard and taken under advisement and not disposed of until March 3, 1955. The judgment of October 11, 1954 was therefore suspended until March 3, 1955 and the time in which to file a notice of appeal did not begin to run until the latter date. (Corwin v. Rheims, 390 Ill. 205, 216; Lenhart v. Miller, 375 Ill. 346, 351.)

■ The trial court held that the original complaint set forth insufficient facts to entitle the plaintiff to the relief which he sought. Thereafter, the plaintiff, in apt time, submitted his amended complaint to the court and to opposing counsel and sought leave to file it. The trial court examined it, held that when plaintiff became a member of the union he agreed to abide by all the rules and regulations of the organization and not having exhausted all his remedies within the union, his submitted amended complaint did not state a cause of action and denied plaintiff leave to file it. It is elementary that if a complaint does not state a cause of action, the court may dismiss it upon motion. (Deasey v. City of Chicago, 412 Ill. 151, 153, 154.) In our opinion, the sufficiency of the submitted amended complaint to state a cause of action is presented to this court by this appeal.

This amended complaint alleged that the defendant, International Association of Machinists, hereinafter referred to as "International," was a voluntary association of individuals with a total dues-paying membership in excess of 600,000 residing and employed

throughout the United States, Canada, Hawaii, the Canal Zone and Alaska; that the territory serviced by International is divided into 157 districts with 1900 local lodges; that defendant, Local Lodge No. 1202, is a subordinate lodge of International and located in District 108, which has in excess of 2000 members with headquarters in Aurora, Illinois; that defendant, P. L. Siemiller, was the general vice-president of International and the titular head of District 108; that defendant, Nicholas Bury, was the president of Local No. 1202, and defendant, V. J. Mazzacano, was the highest ranking union official of Local No. 1202 and its representative to the Grand Lodge of International; that plaintiff had been associated with unionism for 25 years and had been a member in good standing of Local Lodge No. 1202 since September 1, 1942, attended meetings, paid his dues and had held many offices in said union during his years of membership therein.

The amended complaint then alleged that said union and its members are governed by a constitution and rules of order published in booklet form, a copy of which was attached to and made a part of the amended complaint. It was further alleged that at the time plaintiff filed his complaint, he was employed by Stoner Manufacturing Corporation of Aurora, Illinois, then affiliated with International; that on August 12, 1953 defendant, International, and the membership of Local Lodge No. 1202, were negotiating a contract with Stoner Manufacturing Corporation involving wages, hours and working conditions; that on August 12, 1953 a meeting of the employees of the Stoner company was held; that this meeting was in charge of and dominated by defendant, Mazzacano, who demanded that a vote be taken on the proposition of whether or not to strike; that plaintiff requested Mazzacano to conduct the meeting in accordance with the constitution and rules of the order, but Mazzacano refused to do so; that following the union meeting of August 12, 1953 the conduct of

Mazzacano was generally discussed by the members of Local No. 1202 and a petition was circulated among and signed by forty members, directed to the president of District 108, requesting that defendant, Mazzacano, be informed his services were no longer desired and he be excused from further participation in the negotiations then going on; that plaintiff refused to sign this petition, but defendant, Mazzacano, became incensed at plaintiff because of his insistence at the meeting of August 12, 1953, that the constitution and rules of International be followed and Mazzacano then determined upon a plan and scheme to penalize the plaintiff and make an example of him before the membership and expel him therefrom.

It further appears, from the amended complaint and the exhibits attached thereto, that the plaintiff, on September 4, 1953, received a registered letter from the president of Local No. 1202, notifying him that charges "of improper conduct," violative of Section I of Article 24 of the constitution had been filed against him and notifying him to appear before a trial committee of Lodge 1202 on Tuesday, September 8, 1953, at 7:30 P. M. at District No. 108 office, 100 Main Street, Aurora, Illinois; that on September 8, 1953 plaintiff sent a registered letter to the president of Local No. 1202, requesting a copy of the charges filed against him and asking for a continuance of his trial. This request for a continuance was denied and the charges proceeded to a hearing before a trial committee, which, on September 8, 1953, found plaintiff guilty and recommended that he be expelled from the lodge. On September 16, 1953 the trial committee submitted its report and recommendation to the regular meeting of Lodge 1202 and, after hearing the report, the membership of the lodge who were present, 45 in number, voted by secret ballot, unanimously, that plaintiff was guilty as charged and that he should be expelled. Plaintiff was promptly advised of the results of the trial and in-

formed that if he desired to appeal from the action of the lodge, his appeal should be directed to International President, A. J. Hayes, Machinists Building, Washington, D.C. and be taken within thirty days from September 10, 1953. Plaintiff did appeal and his appeal was received by the president of International on October 1, 1953, who advised plaintiff of that fact and that a transcript of the trial of plaintiff's case had been received and would be given careful consideration and a decision rendered according to Section 9 of Article K of the Constitution of the Grand Lodge.

It further appears that the president of International reviewed the record furnished to him on the appeal and concurred in the decision of the lodge and found plaintiff guilty of conduct unbecoming a member, but found the penalty of expulsion too severe and that penalty was set aside. Plaintiff, however, was directed to appear before the membership of Lodge 1202 at its December meeting to be openly reprimanded for his misconduct by the president of the Lodge and that he send a written apology to defendant, Mazzacano, and that a copy thereof be sent to the local lodge, to the general vice-president and to the president's office. The decision of the International president further provided that if the plaintiff failed to appear for reprimand and failed to submit an apology as directed, the financial secretary of the lodge was instructed to refuse to accept any further dues from plaintiff. Plaintiff was promptly notified of this decision.

Thereafter on December 8, 1953 plaintiff, by letter, requested the president of International to (a) reopen the case and permit him to defend the charges, or (b), that the Grand Lodge itself investigate the truth of the charges, or, (c) if neither of said requests be granted, that plaintiff be given such further appeal as was available. In this letter, plaintiff stated that he could not submit to an open reprimand when he had done no wrong, nor could he send a written apology to Mazza-

cano as he had "never attacked his character." Mr. Hayes, president of International, acknowledged receipt of this letter and advised plaintiff that his decision was based on the record and other pertinent information; that the record indicated that he had been served with adequate notice of his trial in the local lodge held on September 8, 1953 and, for that reason, his request that the hearing be reopened would be denied. The president of International treated the plaintiff's letter of December 8, 1953 as an appeal from his decision to the executive council as provided by the Grand Lodge constitution and that council reviewed the case and voted to sustain the decision of the International president and advised the plaintiff that the decision of the president becomes the decision of the executive council.

The amended complaint then alleged that by reason of said appeal of December 8, 1953, and the decision of the executive council as aforesaid, the plaintiff had exhausted his administrative remedies within the framework of the constitution and rules of order of International; that Article 24, Section 6 of said constitution and rules provides that appeals may be taken from the decision of the executive council to the Grand Lodge in convention or an appeal may be made to the membership at large of International through a referendum; that neither of said methods of appeal was reasonably open to the plaintiff for the reason that no Grand Lodge convention would occur until 1956 and that plaintiff was unable to cause, or cause to be conducted, a referendum of more than 600,000 members of International because of the expense and time involved in conducting such a referendum.

It was then alleged that Section 6 of Article 24 of said constitution further provides that before any appeals can be taken from an executive council decision, the decision and all orders of the executive council in relation thereto must be fully complied with by all

266

parties concerned therein, in order to entitle them to enter an appeal; that if plaintiff complied with said decision and said order, the subject matter of said appeal would be rendered moot.

The prayer of plaintiff's amended complaint was that a decree be entered finding (a) that plaintiff's expulsion from Lodge 1202 is null and void and that the defendants be directed to reinstate plaintiff as a member of said lodge; (b) that defendants be enjoined from preferring charges against plaintiff or expelling him or attempting to expel him from said lodge or taking any punitive action against him by reason of any of the matters alleged in his amended complaint; (c) that defendants be directed to show cause why plaintiff should not be permitted to pay dues from the date of his expulsion and attend meetings as a member of Lodge 1202; and (d) that he recover a money judgment against defendant, Mazzacano, in the sum of $7,500.

Section 6 of Article 24 of the constitution of International provides that before any appeal can be taken from an executive council decision, all orders of the executive council in relation thereto must be fully complied with by all parties concerned therein in order to entitle them to enter an appeal. The same section further provides that in no case shall any member appeal to the civil courts for redress until after having exhausted all rights of appeal under the provisions of the constitution. After the decision of the executive council, plaintiff took no further steps within his union, but instituted the instant proceeding.

Counsel for appellees insist that as appellant had not exhausted all the remedies provided in the framework of the union's constitution and rules, he cannot maintain this suit. Counsel for appellant call our attention to the fact, in excuse for his failure to take any further steps within the union, that before plaintiff's appeal from the order of the executive council would be

267

considered, plaintiff was obliged, under the rules of the union, to submit to the penalty imposed, which was a public reprimand and a written apology to appellee, Mazzacano. Had plaintiff done this, he would have fully complied with the order of the executive council and, having so complied, there would be no reason why his appeal should be entertained. Had his appeal then been successful, it would have afforded him no relief. Had the plaintiff complied with the order of the executive council, plaintiff would have been restored to membership in the union. By submitting to the penalty imposed, his appeal would present no question for decision or determination.

In view of our conclusion, it is not necessary for us to determine whether plaintiff exhausted all his remedies within the union. Assuming, however, that he did and that nothing further could be done by him after the executive council had made the decision of the president of International its final judgment, the question then presented is whether the allegations of the amended complaint are sufficient to warrant a civil court to grant plaintiff the relief and redress which was denied him by his union.

According to the complaint, the inception of plaintiff's difficulty with his organization arose when his local lodge met on August 12, 1953 while negotiations were in progress between the union and the Stoner Manufacturing Corporation, by which plaintiff was employed. These negotiations had to do with a contract involving wages, hours, and working conditions. Mr. Mazzacano was in charge of that meeting and demanded that a vote be taken to determine whether the employees should strike. Plaintiff requested Mr. Mazzacano to conduct the meeting in accordance with the constitution and rules of the order, but Mr. Mazzacano declined. Just what Mazzacano did or said in conducting the meeting which was not in accordance with the constitution and rules of the order is not alleged, but

following the meeting of August 12, 1953 it is averred that a petition was circulated, addressed to the president of District No. 108.

This petition referred to the lodge meeting on August 12, 1953 and stated that it was dominated by Grand Lodge Representative Mazzacano whose remarks were made in an "insulting and rabble-rousing manner, leaving the membership with the impression that his prime purpose is to incite a strike rather than negotiate a peaceful settlement between labor and management." This petition then concluded: "We, the undersigned, consider that we are the union and it is our opinion that the representative sent here to negotiate with the company is to represent us and what we want. That a labor union is to bring labor and management closer together, not farther apart. Therefore, we are requesting that Brother Mazzacano be informed that his type of services is not desired and he be excused from taking any further part in our negotiations or making reports thereof to the membership. We sincerely hope you take immediate action on this and give us a representative who will conduct our negotiations in a constructive and intelligent manner. Otherwise it may become necessary to seek assistance from other sources."

The amended complaint alleged that plaintiff did not sign this petition, but averred that the effect thereof was to so incense Mr. Mazzacano that he determined to expel plaintiff from the lodge and, to that end, filed the charges against him. It is then alleged that a copy of the charges preferred against plaintiff was not contained in the letter sent to him dated September 4, 1953. It further alleged that no investigating committee was ever appointed and no preliminary recommendation of the guilt or innocence of the accused established.

The constitution and rules of the union were made a part of the amended complaint. They provide that if any member circulates or causes to be circulated any

false or malicious statement reflecting upon the private or public conduct, or attacking the character, impugning the motives, or questioning the integrity of any officer or member of the lodge, such member shall be guilty of unbecoming conduct, and any member found guilty shall be subject to a fine or expulsion from the lodge or both. (Art. 24, Sec. 1.)

Section 4 of the same article makes it the duty of any member who has information of the violation of any provisions of the constitution by another member to immediately prefer charges in writing against such member by filing the same with the president of the local lodge of which the accused is a member and makes it the duty of the president of the local to forthwith bring the accused to trial under the provisions of Article K of International's Rules of Order which outlines the procedure to be followed. It provides that upon the receipt of written charges against a member, the president of his local must appoint a trial committee and turn over the original written charges to that committee. It also provides that the president shall supply the accused member with a copy of the charges preferred against him. Section 2 of the same article outlines the procedure to be followed by the committee and Section 3 affords the accused the privilege of presenting evidence and, either by himself or by attorney, grants him the right to cross-examine all witnesses appearing for the prosecution. Section 4 then provides that if the member fails to appear for trial when notified to do so, the trial shall proceed as though the member was, in fact, present.

While the amended complaint alleges that no copy of the charges preferred against plaintiff was enclosed in the letter he received on September 4, 1953, it made a copy of that letter a part of the amended complaint and that letter advised plaintiff that charges had been filed and that the charges preferred against him were "improper conduct etc. under Section 1 of Article 24

270

of the Grand Lodge Constitution." This letter directed plaintiff to appear and specifically designated the time and place and concluded: "The trial committee, the appointment thereof, notification and procedure, are in accordance with Article 'K' Code of the Grand Lodge Constitution."

In disposing of the plaintiff's appeal on November 20, 1953 the appeal officer, A. J. Hayes, International President, stated that it appeared from the record of the proceedings which he received from plaintiff's local lodge that with the notice, which was sent the plaintiff on September 4th by registered mail, and which was received by the plaintiff on September 4, 1953, there were two copies of the charges filed against the plaintiff. "If," continued the appeal officer in overruling the contention of the plaintiff, "he (plaintiff) was of the opinion that the details of the charges were insufficiently described in the notice, it was his duty to appear at the hearing and request a continuance."

It also appears from the allegations of the amended complaint that the International president, acting as appeal officer under the provisions of the constitution, reviewed the evidence which appeared in the transcript of the proceedings had by plaintiff's local union on September 8, 1953. This transcript set forth, in detail, the evidence of three of plaintiff's fellow employees and, from the evidence, the appeal officer found that plaintiff participated in circulating the petition, addressed to the president of District No. 108 herein referred to, and held that the object of said petition was to discredit Mazzacano and thus to disrupt the negotiations for a renewal contract. This finding was approved by the executive council, which reviewed the record upon the further appeal of the plaintiff.

In 7 C. J. S. Associations, sec. 26, p. 67, it is stated that where a member of an association has been lawfully expelled he is entitled to reinstatement only on compliance with applicable conditions imposed by the

271

association. On page 68 of the same article it is said that in the matter of the expulsion of a member, the association acts in a quasi-judicial capacity and where the society acts within its powers, fairly and in good faith and in accordance with its laws and the law of the land, its decision is conclusive and a court of equity will not interfere to compel the member's reinstatement and that it is only where the association acted unfairly or in bad faith or beyond its powers and not in accordance with its laws or the law of the land that a court of equity will reinstate a member.

In 4 Am. Jur. Associations and Clubs, sec. 22, p. 469, it is said that membership in an association or society is based upon implied, if not express, condition of loyalty; that the power of expulsion is included in what may be denominated the police power of such organization, which is derived from the law of self-preservation; that such an organization is not vested with the right of expulsion by the general law of the land, but by the agreement of the members as expressed in the charter or constitution and the bylaws establishing that right and denial of guilt by the expelled member does not affect the right of a voluntary association to proceed to try one of its members for an alleged offense which is in violation of its laws. Section 23 of the same article states that where the bylaws of such a society provide for the expulsion of members guilty of acts or conduct which are deemed disorderly or injurious to the interests or hostile to the objects of the organization, such bylaws are not unreasonable, arbitrary, oppressive or violative of any principle of natural justice.

■ It is the law of this jurisdiction that a court of equity will not interfere to control the enforcement of the constitution, rules of order and bylaws of a voluntary association, such as a labor union, church or lodge, or to prevent such an association from expelling members for an alleged violation of some of its

272

rules or regulations unless some special ground for equitable intervention is alleged. (Engel v. Walsh, 258 Ill. 98.)

The Engel case, supra, was a proceeding filed by Charles F. Engel to restrain a labor union from enforcing or attempting to enforce a fine which had been imposed upon him by his union for an alleged violation of the rules of the union in the misuse of the union label on non-union furnace stacks. The chancellor sustained a demurrer to the bill and dismissed it and the Supreme Court, in affirming the judgment of the Appellate Court, which affirmed the decree of the circuit court, stated that the position of the plaintiff was that he sought to retain his status as a member of the union, with all right incident thereto, without the payment of a fine which had been imposed upon him by the legally constituted authorities of his union. The court then said (p. 103): "The courts have frequently been called upon to restrain voluntary associations, such as churches, lodges of various kinds, boards of trade and the like from expelling members for an alleged violation of some rule or regulation of the association and in such cases this court has uniformly refused to sanction the practice of calling on a court of equity to adjust disputes arising between such associations and its members and in the board of trade cases that have come before this court it has refused jurisdiction of the controversy on the ground that the remedy of such member, if he has any, is in a court of law." After citing cases and quoting from People v. Chicago Board of Trade, 80 Ill. 134, on page 137, the court continued (p. 103): "In churches, lodges, labor unions and other voluntary associations, each person on becoming a member, either by express stipulation or by implication, agrees to abide by all rules and regulations adopted by the organization. (Bostedo v. Chicago Board of Trade, 227 Ill. 90.) Courts will not interfere to control the enforcement of by-laws of such associations, but

they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their government." The court then referred to Ryan v. Cudahy, 157 Ill. 108, where it was held that in extreme cases of unfairness and gross injustice inflicted upon a member, a court of equity would take jurisdiction. People v. The Women's Catholic Order of Foresters, 162 Ill. 78, was also referred to where it was said that courts are always reluctant to interfere with the disciplinary powers of voluntary associations and that such interference will never be justified unless the exercise of the power "has been without jurisdiction or marked by gross injustice and unfairness."

Green v. Chicago Board of Trade, 174 Ill. 585, was a suit by a member of the Board of Trade of Chicago, a voluntary corporation, to enjoin the association from trying him for an alleged violation of its bylaws. In his complaint, the plaintiff alleged that he was a member in good standing and innocent and not guilty of the charges made against him and that he had been summoned to appear and stand trial before its board of directors on three-days' notice when he was sick and unable to attend. It was further alleged that one of the rules of the defendant denied him the right to have professional counsel at the trial and charged that such rule was unreasonable and void and if plaintiff was expelled, the injury to him would be irreparable. The chancellor granted a temporary injunction, which, upon a hearing, was dissolved and the suit dismissed. In affirming the judgment of the Appellate Court, which affirmed the decree of the circuit court, the Supreme Court, in overruling the contentions of the plaintiff, stated that the offense charged was one that was clearly in violation of the bylaws of the defendant and although the complaint averred that the plaintiff was not guilty of the offense charged, that fact could not affect the right of procedure. The opinion then con-

tinues (pp. 592, 593): "When it is considered that, as a rule, the body of the board of directors is composed of men not conversant with forms of procedure and technical rules of law, but are organized into a corporation or association for business purposes and the governing body before whom trials are to be had is circumscribed by no technical rules of law and that the purpose is to investigate whether there has been a violation of the rules of that body—rules with which they, as well as the accused, are familiar—it will be seen the employment of professional counsel would not be calculated to expedite business or advance the interest of the accused, because the judges are unacquainted with technical rules of law. With such a body to try the accused under its own rules, subscribed to by the accused, the exclusion of professional counsel does not violate our sense of right, is not against public policy or unreasonable. The manner of investigation to determine whether charges shall be preferred, the manner of trial, the body before whom the trial is to take place and the exclusion of professional counsel, are all provided for by the by-laws and are methods of discipline. They infringe no rule of law and are not unreasonable. They provide a tribune and procedure voluntarily chosen to determine questions arising between the association and its members, according to rules to which the members assented on being admitted. As heretofore said, where such by-laws infringe no public policy or rule of law and are not unreasonable, courts will never interfere to control their enforcement, but such corporations or associations will be left to enforce their rules and regulations in the manner they have adopted for their own government and methods of discipline." The court then concluded (p. 594): "To allow an injunction in cases of this character would result in transferring offenses against the rules of clubs, societies, churches, corporations and associations of this character to courts of chancery for trial, where it was

275

alleged the membership was of pecuniary value and that the complaining member could not have a fair trial under the rules of the organization to which he belonged."

In Sanders v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, 130 F. Supp. 253, three cases were consolidated for trial and determination. The issues arose out of a controversy between the International Association of Bridge, Structural and Ornamental Iron Workers and its local union of Paducah, Kentucky and sought to have adjudicated the rights of W. B. Sanders and other deposed and disciplined officers of Local Union 595 of the International Association and to determine the rights of said local union and a Kentucky corporation, Iron Workers Association, Incorporated. The record disclosed that on September 26, 1953 written charges were preferred against Sanders and seven other members and officers of Local Union 595. They were charged with causing and continuing a strike at the Joppa, Illinois, Steam Electric Station Project contrary to a no-strike agreement which had been entered into between the contractor of certain construction work at said project, the International Association and Local Union 595. They were also charged with issuing illegal orders to picket, strike and barricade the project and refusing to comply with the orders of the general president and general secretary of the International Association. Trials were had before the general executive board at which the defendants were present, evidence was introduced and the trials were conducted according to the rules and practices of the International Association. The general executive board, on December 9, 1953, found the defendants guilty and expelled Sanders as a member of the International Association and of Local Union 595, and forever debarred him from becoming a member of the International Association or any of its affiliated local unions. Percy Cloud, another member, was debarred for a period of ten years and the other

officers and members were debarred for seven years. This action and judgment of the general executive board were affirmed by the general executive council of the International Association and, according to the constitution of the International Association, appeals may be taken from the decisions of the grand executive council to the regular convention, which would not convene until 1956. Under the constitution, however, no appeal will be considered by the regular convention unless it is shown that there has been a compliance with the decisions of the general executive council. This was, as in the instant case, a jurisdictional fact and a condition precedent to any hearing of such an appeal by the regular convention.

Sanders and the other officers and members of Local Union 595 declined to recognize the ruling of the general executive council of the International Association and continued to operate and conduct the affairs of this local union by collecting dues and attending to all matters pertaining to its operating functions. The court, in its opinion, stated that the officers of the International Association followed the prescribed procedure in making the charges, in considering the charges made, in the trial and throughout the hearings, with meticulous care and that they reached their conclusions and based their findings on facts presented by the evidence which amply justified the decisions. The court held that there was nothing in the record that would justify a court of law in setting aside the findings of fact of this governing body of the union on the ground that the findings were either irregular, unfair or without basis of fact. The opinion then continues (p. 257): "A labor union, like any other voluntary society that holds out plans and programs of mutual benefit to its members, has a right and a duty to the members to set up regulatory tribunals in order to discipline those who accept the privileges but ignore the obligations of membership and to protect the members who have subscribed to and are attempting to

277

fulfill the precepts and principles of the organization. So long as these rules are reasonable and not contrary to public policy and the procedure may be simply adapted to the determination of complaints, they are entitled by law to be respected and upheld. In the instant case, in reviewing the whole proceedings before the general executive board, this court cannot substitute its judgment on the facts for the judgment of the board, nor lightly set aside decisions of the general executive board and the general executive council which careful scrutiny indicates were clearly in conformity with the accepted procedure of the union as set out in the constitution of the organization." The court then went on to say that bar associations and courts have a right to discipline the members of the legal profession; that medical associations may expel their members; that other voluntary societies have a legal right to discipline their members and to deny them membership for infringement of rules and disregard of regulations; that this right to exclude or expel applies to labor unions and organizations and is generally upheld as the constitution and bylaws of the union are a contract and agreement with each individual member.

While recognizing that, in order to fulfill its functions and protect the rights of its members, a labor union must have authority to classify and discipline its membership and that the constitution of the association placed no limit upon the authority of the general executive board to punish its members, the trial court, while sustaining the sentences imposed upon the several members for a certain number of years, held that the expulsion of Sanders for life was not a reasonable exercise of the authority vested in the general executive board. Upon appeal of this case to the United States Court of Appeals for the Sixth Circuit, that court, in an opinion filed July 13, 1956, affirmed the findings of the district court to the effect that Sanders and the other officers and members of the union had

278

been given proper hearings and trials in accordance with the constitution of the International Association by which the local union and the members thereof were governed. The circuit court of appeals further concurred in the conclusion arrived at by the district court that the charges against the individual members were lawful and justified and that disciplinary action was proper, but refused to concur in the holding of the district court that the expulsion of Sanders was not a reasonable exercise of the authority of the general executive board and held that the constitution of the union clearly authorized the action taken by that board. In the course of its opinion, the court said: "The expulsion and debarment of appellant Sanders for life was a valid exercise by the union of its powers under its constitution and a legal exercise of its rights under the pertinent statute. As has been well said, 'A union must have authority to discipline its members, otherwise it will have no power to bargain effectively. Expulsion of an offending member is not so much a matter of discipline as it is of protection of the union. The preservation of an organization whose constitution and by-laws are lawful, by allowing it to expel those who seek to undermine it, is a stronger basis for public policy than the possible inability of the resurgent member to subsequently gain employment in his present occupation.' "

▮ While all of the authorities are to the effect that a court will not reverse the expulsion of a member of a union for an infringement of its rules where it appears that the expulsion is ordered in accordance with the constitution and bylaws of the union, it is also equally well settled that courts will interfere with the decision of an association expelling one of its members if it appears that the rules of the association governing expulsion have not been observed or if the accused member has not been afforded those rudimentary rights which will give him an opportunity to defend against the charges made. These rights include

279

notice to the accused of the charges made against him, an opportunity to be present and confront and cross-examine his accusers and an opportunity to make a defense and refute the evidence produced in support of the charges. (Carson v. Glass Bottle Blowers Ass'n of United States & Canada, 37 Cal.2d 134, 231 P.2d 6, 21 A.L.R.2d 1387.)

In Morgan v. Local 1150, United Electrical, Radio & Machine Workers of America, 331 Ill. App. 21, it was said that a labor union had inherent power to adopt a method of procedure for the trial and punishment of its members provided the method adopted was not in conflict with the letter or spirit of the constitution of the parent organization and was in conformity with standards usually afforded for a fair trial. The court went on to say that the essential requirements of such a trial are (a) that the nature of the offense be presented in writing to the union and to the member charged; (b) that the member be notified of the hearing; (c) that the member has the right to appear at the hearing and participate in the trial; and (d), that he have the right to appeal from any adverse decision.

In the instant case counsel for appellant insist that plaintiff was expelled from the union through false and fictitious charges and that his lodge proceeded to try him without specifying those charges and without furnishing to him a copy thereof as the constitution provides and that his request for a continuance of the hearing had on September 8, 1953 was unceremoniously refused.

■■■ We do not think there is any merit in these contentions. The letter directing appellant to appear for trial on September 8, 1953 advised plaintiff of the nature of the charges. Furthermore, the transcript of the record furnished to the president of International, as appeal officer, disclosed he had been furnished with a copy of the charges. The appeal officer found appellant was fully apprised of the nature of the charges. The law does not require technical accuracy to be observed

■■■■■■■■■■■■■■■■■■■■■■■■■■

in a trial for expulsion of a member from a voluntary association and such matters of procedure will not be reviewed by a court. (Yeomans v. Union League Club of Chicago, 225 Ill. App. 234; Morgan v. Local 1105, United Electrical, Radio & Machine Workers of America, 331 Ill. App. 21.)

■ As to the contention that appellant's request for a continuance should have been granted, it was held in Robinson v. Yates City Lodge No. 448, A. F. & A. M., 86 Ill. 598, that the Masonic Lodge, of which plaintiff was a member, had jurisdiction to try him for unmasonic conduct in his absence notwithstanding the fact that plaintiff had advised the presiding officer of the lodge that other duties would prevent him from being present at the time appointed for his trial.

Counsel have not pointed out where any provisions of International's constitution or bylaws are unreasonable or in contravention of public policy. Nor does it appear that any right given appellant, under its constitution or bylaws to which he assented, has been infringed. He was informed of the nature of the charges and was tried according to the procedure outlined in the constitution and rules governing the organization of which he became a voluntary member. He delayed until the day when he was to be tried and then informed the president of his union that his work made it impossible for him to attend. The trial was had and he was promptly notified of the result and appealed from the decision of the trial tribunal.

■ Under the authorities, there is nothing alleged in his amended complaint that would confer jurisdiction upon the trial court to redress his grievances. The chancellor, therefore, did not err in his rulings and the orders and judgment of the circuit court of Kane County are, therefore, affirmed.

Orders and judgment affirmed.

EOVALDI and CROW, JJ., concur.