August A. Van Daele, Sparkle Food Center, Inc., and Hickory Hills Super Mart, Inc., Plaintiffs-Appellees, v. Henry Vinci, et al., Certified Grocers of Illinois, Inc., a Corporation, and Walter Pauli, Defendants-Appellants.

Gen. No. 54,576.

First District, Fourth Division.

September 16, 1970.

Rehearing denied November 6, 1970.

Harry L. Rudnick and Paul D. Rudnick, of Chicago (Rudnick & Wolfe, of counsel), and W. Donald Mc-Sweeney and Thomas P. Luning, of Chicago (Schiff, Hardin, Waite, Dorschel & Britton, of counsel), for appellants.

Thomas P. Sullivan, Robert E. Pfaf, and Robert C. Keck, Jr., of Chicago (Jenner & Block, of counsel), for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This action, Count IV of a multicount complaint against defendants, was brought to enjoin disciplinary action against plaintiffs as members of a private, voluntary incorporated association, and for other relief. The trial court granted plaintiffs' motion for a temporary injunction, and subsequently a permanent injunction was issued restraining defendant corporation, Certified Grocers of Illinois, Inc., (hereinafter "Certified") its employees, representatives, servants and agents, from taking any action to carry out the resolutions of the Board of Directors of Certified (hereinafter "Board") expelling plaintiffs as members, and from taking any punitive action against the plaintiffs by reason of the resolutions. Defendants appeal from these injunction orders.

A summary of the events culminating in the trial court's injunction orders follows. On January 30, 1969, the Board sent notices to the plaintiffs, Sparkle Food Center, Inc., (hereinafter "Sparkle") and Hickory Hills Super Mart, Inc., (hereinafter "Hickory") of a special meeting of the Board to be held on February 25, 1969, for the purposes of determining whether Sparkle and Hickory should be censured, suspended or expelled as members of Certified pursuant to section 22 of Article II of Certified's bylaws. The charges were based upon the alleged acts of Frank R. Guinta, a shareholder and

officer of Sparkle, and Adolph Kalchbrenner, a fifty percent shareholder and President of Hickory. It was charged that these men associated with the "Certified Stockholders Committee for Fair and Better Management," disrupted Certified's business, impeded the resolution of problems associated with Certified's construction program, spread false rumors and made untrue statements which were intended to, and which did injure Certified's directors and officers, and engaged a public relations firm to publicize charges against Certified for the purpose of aiding the election of the Stockholders' Committee's nominees to the Board of Directors of Certified.

The notifications sent to plaintiffs further advised them that:

> You may be present at said meeting and present such evidence, make such arguments as you may deem necessary in your defense, and you may be accompanied by legal counsel to assist and advise you during the course of said proceedings.

On February 21, 1969, four days before the expulsion hearing was to be held, plaintiffs amended a previously filed complaint in the Circuit Court by adding Count IV in which Sparkle and Hickory sought equitable relief against Certified. Sparkle and Hickory prayed for a temporary and permanent injunction restraining the defendants from taking any action to censure, suspend or expel them from membership in Certified. In response, defendants filed a verified answer to Count IV denying the material allegations therein set forth. The trial court continued the cause in order to determine what action the Board would take based on the charges brought against the plaintiffs.

Hearings before the Board were held on February 25 and April 9, 1969. At the hearings plaintiffs made several preliminary motions. They moved to disqualify

specific members of the Board as being prejudiced; to disqualify those who would allegedly profit in the event of plaintiffs' removal; and to dismiss the statement of the charges. These motions were denied by the Board. Plaintiffs also requested that any person not a member of the Board be excluded from the hearing room. This request was granted and several nonmembers of the Board were excused. The Board's attorney then presented the evidence in support of the charges against plaintiffs. The evidence consisted of documents marked as exhibits, excerpts from transcripts of sworn testimony given in depositions, and trial testimony taken with respect to other counts of plaintiffs' multicount complaint. After the Board's counsel rested, plaintiffs again moved to dismiss the charges. The Board in a vote of ten in favor and one abstention denied plaintiffs' motion. The plaintiffs, through their private counsel, offered as their only proof in opposition to the Board's charges their good standing membership in Certified through the years and their rebate schedules for the past several fiscal years.[1]

After closing arguments of counsel, the directors by a vote of ten to one approved resolutions expelling the plaintiffs as members of Certified effective April 9, 1969.

---

[1] Certified is a grocery cooperative whose members are independent retail grocers. Certified's members purchase almost all of their groceries, meats, produce and milk products through Certified, and thereby obtain the benefit of large volume, low-cost purchasing. Certified manufactures and processes several large volume products such as milk, dairy products, beverages and ice cream.

Certified charges its members more than Certified's cost for the products delivered. However, part of the excess payment is then refunded annually to members in the form of a patronage rebate or dividend. The remainder of the excess payment is used to pay Certified's operating expenses and retained for reserve accounts or surplus. By pooling members' funds and resources Certified is able to accumulate capital which it uses for its own reserves, for plant expansion, or to make loans to its member grocers.

Plaintiffs were permitted to purchase merchandise from Certified until May 9, 1969.

Subsequent to the Board's passage of the expulsion order, Sparkle and Hickory filed a motion for a temporary injunction to restrain enforcement of this resolution and on May 5, 1969, a temporary injunction enjoining defendants' enforcement of their expulsion order was issued.

Thereafter Hickory and Sparkle sought a permanent injunction. The trial court considered Count IV of plaintiffs' second amended and supplemental complaint, defendants' answers, the transcripts of the hearings before the Board on February 25, 1969, and April 9, 1969, relating to the expulsion of Sparkle and Hickory, and the exhibits introduced at these hearings. On September 30, 1969, the trial court entered an order permanently enjoining Certified from taking any action to carry out the resolution of the Board expelling plaintiffs as members of Certified and from taking any punitive action against plaintiffs by reason of the April 9, 1969, expulsion resolution.

Opinion

Defendants contend that the courts cannot interfere with plaintiffs' expulsions from Certified since (1) it is a private, voluntary incorporated association and (2) the disciplinary proceedings conducted by the Board were in accordance with Certified's bylaws, by which plaintiffs agreed to be bound when they purchased and were issued their shares of stock in the corporation. In a series of cases the courts of this state have established the principle that they would not interfere with or regulate the internal activities of a voluntary association. People ex rel. Rice v. Chicago Board of Trade, 80 Ill 134; Sturges v. Chicago Board of Trade, 86 Ill 441; Pitcher v. Chicago Board of Trade, 121 Ill 412, 13 NE 187; Ryan v. Cudahy, 157 Ill 108, 41 NE 760; People ex rel. Keefe v. Women's

338

Catholic Order of Foresters, 162 Ill 78, 44 NE 401; Chicago Board of Trade v. Nelson, 162 Ill 431, 44 NE 743; Green v. Chicago Board of Trade, 174 Ill 585; Bostedo v. Chicago Board of Trade, 227 Ill 90, 81 NE 42; Engel v. Walsh, 258 Ill 98; Werner v. International Ass'n of Machinists, 11 Ill App2d 258, 137 NE2d 100. See also Parsons College v. North Cent. Ass'n of Colleges and Secondary Schools, 271 F Supp 65 (ND Ill 1967).

In Engel v. Walsh, supra, 103, the court in reviewing its prior decisions based on judicial nonintervention in the affairs of private, voluntary associations stated:

> The courts have frequently been called upon to restrain voluntary associations, such as churches, lodges of various kinds, boards of trade, and the like, from expelling members for an alleged violation of some rule or regulation of the association, and in such cases this court has uniformly refused to sanction the practice of calling on a court of equity to adjust disputes arising between such associations and its members, . . . . In People v. Chicago Board of Trade, 80 Ill 134, on page 137, it was said: "The board of trade, so far as we can see, is only a voluntary organization, which its charter fully empowers it to govern in such mode as it may deem most advisable and proper. It has adopted its bylaws, provided a forum for their enforcement, which has acted thereunder, and the court will not interfere to control its action." In churches, lodges, labor unions, and other like voluntary associations, each person on becoming a member, either by express stipulation or by implication, agrees to abide by all rules and regulations adopted by the organization. (Bostedo v. Chicago Board of Trade, 227 Ill 90.) Courts will not interfere to control the enforcement of bylaws of such associations, but they will be left free to enforce their own rules and regulations by such means

339

and with such penalties as they may see proper to adopt for their government.

See also Parsons College v. North Cent. Ass'n of Colleges and Secondary Schools, supra, for a more recent statement of the controlling Illinois law.

In Chicago Board of Trade v. Nelson, supra, Nelson was suspended by the Board pursuant to its bylaws. Nelson sought a writ of mandamus to compel the Board to permit him to resume his privileges. The court held that since the Board was a voluntary association it would not interfere with the Board's disciplinary powers. In its opinion the court discussed the contract obligation which existed between the Board and its newly accepted members. At page 438 the court said:

> This corporation is not bound to admit any person to membership, nor was the relator in any way forced into such association. *He voluntarily became a member, and by his contract is bound to abide by the rules and regulations of the board.* The courts will never interfere to control the enforcement of bylaws of such associations, but they will be left to enforce their rules and regulations by such means as they may adopt for their government. . . . The court has repeatedly refused to interfere with the disciplinary powers of this board, in equity as well as at law. (Emphasis ours.)

In the instant case a similar contract obligation existed between Certified and plaintiffs. Article XV of Certified's bylaws provides in part:

> These Bylaws, and any amendments hereinafter adopted, and any Rules and Regulations promulgated pursuant thereto, *shall constitute a contract between the corporation and the shareholders, and between the shareholders, and shall be binding on all shareholders,* their successors, heirs, executors,

340

administrators, assigns and personal representatives, as the case may be. *The purchase of shares and the issuance thereof to any shareholder shall constitute and be equivalent to a consent to be bound by these Bylaws and the Rules and Regulations promulgated pursuant thereto and an agreement on such shareholder's part to be bound thereby.* (Emphasis ours.)

 Therefore, as in Nelson, Certified and plaintiffs under their contract were bound by the corporation's bylaws then in effect.

Article II, section 22 of the bylaws provides for the censure, suspension or expulsion of a member of Certified. By its contract with plaintiffs the Board was required to follow the procedural rules set forth in this section. Section 22 provides in part:

SECTION 22. CENSURE, SUSPENSION OR EXPULSION. The Board of Directors, for good cause, and in its discretion, may censure, suspend, or expel a member.

Violation of the Bylaws or Rules and Regulations shall constitute good cause. The spreading of false rumors concerning the officers, directors or management of the corporation, or one or more of them, or the corporation, or the making of untrue, misleading or disparaging statements or remarks concerning them or one or more of them, with the intention and calculated to injure or which may have a tendency to or does injuriously affect the standing, prestige or influence of the officers, directors, management of the corporation and the corporation, or either of them, shall also constitute good cause.

It shall require the affirmative vote of a majority of the directors present at any board meeting to censure or suspend a member, but shall require the affirmative vote of not less than two-thirds of the

341

directors present at a board meeting, to expel a member.

Notice shall be given to any accused member of the intention of the Board of Directors to consider and determine whether such member shall be censured, suspended, or expelled, and date, time and place of the meeting. Notice to such member shall specifically state the provision or provisions of the Bylaws or Rules and Regulations which have been violated or the improper conduct, constituting good cause as herein defined. The accused member may appear at the Board meeting and present such evidence or make such arguments as he may deem necessary in defense of himself.

. . . . . .

The decision of the Board of Directors as expressed in any order or resolution of censure, suspension or expulsion, shall be final, unappealable, and binding on the affected member.

Pursuant to section 22, notices were sent to plaintiffs almost one month before the scheduled disciplinary hearing was to be held. The notices advised plaintiffs of the intention of the Board to consider disciplinary action against them including possible expulsion, and further cited the bylaws violated and the conduct constituting "good cause" for possible expulsion, censure, or suspension. The notices also specified the time and place of the special Board hearing and provided that plaintiffs could present evidence and arguments in their defense with the assistance of legal counsel.

At the disciplinary hearings which were held by the Board plaintiffs were represented by private counsel, and they were given the opportunity to present evidence and make arguments in their defense. Furthermore, the Board's vote to expel each plaintiff was ten to one, which

342

was greater than the necessary two-thirds requirement to expel a member.

Plaintiffs argue, however, that the Board failed to follow the provisions of section 22 of the bylaws by its failure to appoint a grievance committee. This specific clause in section 22 provides that:

> The Board of Directors may appoint a grievance committee authorized to make the necessary investigation, hear evidence and make its report of findings to the Board of Directors.

The appointment of a grievance committee by the Board is not mandatory. Nowhere within this provision is the final decision to censure, suspend, or expel a member shifted from the Board to the grievance committee. The committee "may" be appointed by the Board to hear evidence but its findings are then reported to the full Board. The ultimate responsibility to decide the facts and to take the necessary action based on these facts lies with the Board, for only they can vote to censure, suspend, or expel a member as provided by Certified's bylaws.

We find no prejudice to plaintiffs in the fact that the Board did not appoint a grievance committee.

Plaintiffs urge this court to adopt what they contend is a new body of law in the field of private, voluntary associations. They argue that while the courts of this state were once reluctant to intervene on behalf of a member of a private, voluntary association to prevent his expulsion, regardless of the circumstances, the courts have now developed a body of law which guarantees to members of voluntary incorporated associations full judicial review of the sufficiency of the evidence. Plaintiffs cite Morgan v. Local 1150, United Electrical, Radio and Machine Workers of America, 331 Ill App 21, 72 NE2d 59; Werner v. International Ass'n of Machinists, 11 Ill

343

App2d 258, 137 NE2d 100; O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446; and Virgin v. American College of Surgeons, 42 Ill App2d 352, 192 NE2d 414, to indicate that the trial court properly reviewed the evidence presented at the expulsion proceedings and held that their rights had been violated.

In Morgan, supra, the chancellor entered a decree which found that the union's executive board order for the expulsion of Morgan was null and void; directed that the orders of expulsion be expunged; and enjoined the defendants from enforcing the expulsion order. On appeal the court reversed the chancellor's findings. The court found that Morgan received a fair trial under the methods of procedure set up by the local union and that not having exhausted his remedies by appeal to the national union, he was precluded from invoking the jurisdiction of a court of equity to set aside his expulsion and order his reinstatement. The court stated that the essential requirements for a fair hearing were: notice in writing, a clear statement of the charges, and an opportunity to appear and defend; and that such protections were afforded Morgan under the union's constitution. As heretofore determined in the instant case, the plaintiffs were given notice of the hearing in writing; the notice contained a clear statement of the charges; and they were allowed to appear at the hearing and participate in the proceedings.

In Werner, supra, as in Morgan, the court refused to intervene in a union's disciplinary proceedings. Werner complained that he had been expelled from the union through false and fictitious charges; that the charges were neither specified nor furnished to him; and that his request for a continuance was denied. The court found that Werner had been advised of the nature of the charges; that a copy of the charges had been furnished to him; and that the request for continuances did not have to be granted. Thus, the court held that there was

344

nothing in Werner's amended complaint that would justify the trial court to redress his grievances and it affirmed the dismissal of his complaint.

We note that the court in Werner did not inquire into the sufficiency of the evidence of the "false and fictitious charges" argued by Werner on appeal.

In O'Brien v. Matual, supra, the trial court enjoined a temporary trustee appointed by the international union's president from interfering with the local union's operations. On appeal by the temporary trustee the court upheld the injunction. However, it appears that the court based its decision on the failure of the national union to abide by its constitution in affording the local officers notice and a legal hearing. Therefore, we believe that the O'Brien decision was a limited judicial intervention to determine whether the proper procedures were followed by the union and was not the full scale judicial review of the evidence as is suggested by plaintiffs. The same may be said of Morgan and Werner.

Plaintiffs also rely on Virgin v. American College of Surgeons, supra. Dr. Virgin was expelled from the American College of Surgeons based on charges of which he was never informed and he was afforded no opportunity to present his side of the case. Furthermore, the expulsion meeting of the Board of the College was held without notice to Dr. Virgin. The trial court found against Dr. Virgin and dismissed his application for declaratory judgment seeking reinstatement. However, on appeal the court held that Dr. Virgin was never legally expelled from the College and directed the trial court to enter a writ of mandamus commanding the College to reinstate him. At page 371 the court states:

> It is, therefore, clearly apparent that Dr. Virgin was not given notice according to the bylaws. He never received any registered mail as the bylaws required, nor was he at any time allowed to confront

his accusers or given a fair hearing upon the charges against him. He was never given any idea of what charges were presented against him. The hearing did not in any way meet the requirements of due notice and proper hearing upon the question of his expulsion and is, therefore, void and the expulsion must be set aside.

It is clear that the requirements were not met and the hearing is, therefore, invalid.

We hold that Dr. Virgin was never legally· expelled from the college and the mandamus must be directed to be entered.

Accordingly, in Virgin as in O'Brien, the failure of the association to abide by its bylaws was the basis for the court's intervention in the association's internal affairs and not to review the sufficiency of the evidence for expulsion.

██ As we have shown, in none of the four Illinois cases advanced by plaintiffs did the court in fact consider the sufficiency of the evidence. Therefore, we cannot agree with nor adopt plaintiffs' theory that the Illinois courts have developed a new body of law in which they will review the sufficiency of the evidence presented at a disciplinary hearing. We are also not persuaded by the two New York cases cited by plaintiffs in support of this same argument. Harmon v. Matthews, 27 NYS 2d 656 (1941), and Madden v. Atkins, 4 App Div2d 1, 162 NYS2d 576.

██ Even though some of the Illinois cases which declare a limited judicial intervention into the affairs of a voluntary association are "Nineteenth Century" they still reflect this state's law. While the courts will regulate the internal activities of a private, voluntary association to insure compliance with the procedures established by their bylaws, the courts will decline to intervene on behalf of an expelled member where he seeks a full judi-

346

cial review of the evidence on which his expulsion was based.

■ In the instant case it was the function of the Board to determine from the evidence whether "good cause" for plaintiffs' expulsions had been established. It was also the function of the Board to act in the best interests of the entire association and it was its responsibility to interpret the bylaws to which plaintiffs had agreed when they joined the association. The charges were not denied by the plaintiffs nor was any counterproof offered by them. Therefore we hold that the trial court improperly substituted its judgment for that of the Board in determining whether "good cause" had been shown for plaintiffs' expulsion.

Plaintiffs also contend that their expulsions were invalid because the requirements of due process were not met. Plaintiffs first argue that Certified's Board was not impartial because many of the members were involved in the events which gave rise to the charges against them and because the Board acted as both prosecutor and judge. Plaintiffs cite several cases in support of their position. These cases include: Wilcox v. Supreme Council of Royal Arcanum, 151 App Div 297, 136 NYS 377, affd 210 NY 370, 104 NE 624; Madden v. Atkins, supra; Miller v. Building Service Maintenance and Miscellaneous Employees Union Local 400, 28 Misc2d 48, 211 NYS2d 459 [2]; and Willis v. Davis (Tex Civ App), 233

---

[2] In this case, decided by a referee, it was held that since the plaintiff had, prior to his expulsion, filed charges against four of five trial board members the findings of the board removing him from office were "worthless." However, this decision was reversed in Miller v. Building Service Maintenance and Miscellaneous Employees Union Local 400, 16 App Div2d 211, 226 NYS2d 697, 700, by the Appellate Division of the Supreme Court of New York, the court stating:

It is not the concern of the court here to provide all the safeguards of due process in a criminal prosecution. In the latter, not only the possibility of bias but the appearance of it must be

347

SW 1035 (1921). Plaintiffs urge that we accept the findings of these cases which, they say, demonstrate that members of an association who have been accused of wrongdoing cannot sit in judgment in an expulsion proceeding over the very people who made the accusations in the first instance.

However, we believe that the better-reasoned approach to the dilemma into which plaintiffs seek to place Certified is found in Green v. Chicago Board of Trade, 174 Ill 585, and Hall v. Morrin (Mo App), 293 SW 435 (1927). In Green plaintiff sought to enjoin defendant from trying him for a violation of its bylaws. One of the plaintiff's arguments, which is found at page 590 of the court's opinion, is:

> . . . that the appointment of a committee to investigate and determine whether charges shall be preferred against him, from the members of the board of directors, who are to constitute the body to try him, would make his judges his prosecutors who had prejudged his case, and therefore the rule is unreasonable, illegal, and void.

The court disagreed with plaintiff's argument. At page 592 the court states:

> The fact that the charges are preferred by a member of the board of directors which is to try the accused would not be cause for interference by a court of equity to prevent a trial. To assume in advance that such a board would not give a member a fair trial is to deny to such a body the reputation for justice and fair dealing which commercial and mer-

avoided. Here the object of the court is to see to it that actual unfairness has not attended the proceeding (see Summers, The Law of Union Discipline, 70 Yale LJ 175). Here the charge was substantial, it was properly made, and the plaintiff, in effect, pleaded guilty to it. He should not now be heard to complain.

cantile associations have always enjoyed. It is to assume that men will not deal fairly with one of themselves. Such presumption cannot be entertained. If the fact that charges were preferred by a member of a board of directors would prevent a hearing by them on charges, it would also apply in case the power of trial was lodged in the body of the members, as it frequently is. If the board of eighteen directors would be disqualified from trying a member because one or two had prejudged his case, and a court of equity would on that ground interfere by injunction to prevent a trial, then one or two members of the board who might have prejudged the case favorably to the member to be tried could prevent a trial by announcing the fact that they had prejudged the case.

In Hall v. Morrin, supra, the plaintiff also argued that the defendants, as members of the executive board, were disqualified from hearing the expulsion proceeding brought against him by reason of their interest in the subject matter which would prevent them from giving plaintiff a fair and impartial trial. The court, at page 440, disagreed with plaintiff's theory:

> [I]n the case at bar, we find nothing to indicate that plaintiff's trial was unfair or that it was conducted other than in substantial conformity with the constitution. Certain of the authorities cited by learned counsel for plaintiff declare the wholesome doctrine that, when the rules of an order permit, the persons constituting the tribunal before which the trial is to be had must be such as have no interest in the subject matter. We most heartily accede to this statement, but, in the case at bar, under the laws of the association the general executive board, as constituted, was the only body with original jurisdiction to hear and determine the charges lodged

349

against plaintiff. If the general executive board was incompetent to try plaintiff, then it is manifest that he could not have been tried at all, and he might, as suggested by defendants, have committed any offense with impunity, no matter how derogatory to the interests of the association, so long as he was careful at the same time to include therein some slander against the members of the general executive board. Or, if the argument is carried to its logical conclusion and plaintiff's theory adopted that the tribunal could never be composed of persons having a possible interest in the subject matter, in the event that a member of an organization should slander the entire membership of his association, no one competent to try him could be found and the association would be thus rendered utterly helpless to defend itself against such member's attacks, no matter how vicious or unwarranted they might have been.

There are many instances that occur to us in which the members of the tribunal, before which the hearing is had, are either directly or indirectly affected by the offenses alleged to have been committed. Courts cite and try persons for contempt. Directors of boards of trade and stock exchanges try members for offenses which have injured the very directors sitting in judgment, and similar practice is to be found in the cases of police boards, medical societies, bar associations, clubs, and other social organizations. *We conclude, therefore, that, inasmuch as the manner of plaintiff's trial was governed by the contract existing between him and the International Association, and inasmuch as the hearing appears to have been conducted in substantial conformity with the laws and rules of practice provided in the constitution by which he had agreed to*

*be bound, his objections to the validity of his trial and conviction are not well taken.* (Emphasis ours.)

See also Gottlieb v. Economy Stores, 199 Va 848, 102 SE2d 345, which involved the expulsion of a member from a retail grocers association.

 In the instant case Certified's Board was the the only body which could determine whether to expel a fellow member. When plaintiffs joined Certified they agreed, as per their contract, to abide by the rules and regulations of the corporation's bylaws, one of which provided that the Board could "for good cause, and in its discretion" expel a member. Article II, section 22 of the bylaws makes expulsion the sole responsibility of the Board. A determination of expulsion by any other body would be invalid.

We would also point out that the trial judge disagreed with plaintiffs' argument in relation to the impartiality of the Board when he said:

> There was much made of the fact that the Board was a prejudiced body, and I don't think that is appropriate. I think, as the members of the Board of Directors, they have an absolute duty to run the affairs of that association; and I think they cannot be put in a position where they have to abdicate their responsibilities because somebody charges them with prejudice when they are called upon to rule on something, because they could then be compelled to disqualify themselves any time they take any action that offends an individual shareholder so the Board would have no function whatsoever.

Plaintiffs' second due process argument is that at no time were they given an opportunity to face their accusers. They complain that they were denied this right because Henry Vinci, Chairman of the Board, did not

351

testify and, in fact, no witnesses were offered who could be cross-examined. Plaintiffs' counsel called Mr. Vinci to be sworn and testify, but he refused. After a discussion on plaintiffs' request that the Board direct Mr. Vinci to testify, the Board adopted a resolution "that Mr. Vinci or any other employee of this corporation have the right to testify or not to testify at this hearing, and the Board will not direct or request any employee to testify or refrain from testifying."

■ The Board's resolution was in conformity with their authority as provided within the bylaws. The Board has no subpoena power and therefore it could not compel the attendance of witnesses nor request testimony from any person who may be present. In a similar situation the court in Parsons College v. North Central Ass'n of Colleges and Secondary Schools, supra, 73, stated:

> Since the Association has no power to summon witnesses or to compel them to testify, to require the full panoply of the procedure of a judicial trial would frequently make it impossible for the Association to act. Cf. People ex rel. Bluett v. Board of Trustees, 10 Ill App2d 207, 134 NE2d 635, 58 ALR2d 899 (1956).

From our review of plaintiffs' due process arguments we conclude that the proceedings before the Board were conducted in conformity with the bylaws which all of Certified's members, including plaintiffs, agreed would govern. Plaintiffs were given written notice of the hearing; they were served with a copy of the charges; they, along with their attorney, were present throughout the hearing although counsel is not required by Certified's bylaws or by Illinois law (Green v. Chicago Board of Trade, supra) ; they were allowed to examine all exhibits introduced to support the charges against them; and they were allowed the opportunity to rebut or disprove

the evidence presented against them which they chose not to do except by introducing evidence of their good character and standing as members of Certified.

In Parsons College, supra, plaintiff argued that the Association's procedures operated to deny it due process. The court stated at page 70:

> Invoking a claim of due process, the College draws no support from the commands of the federal Constitution, as contained in either the Fifth or Fourteenth Amendment. By their terms, these constitutional guarantees control only the action of government. Designed to guard the individual against the overweening power of the state, they do not control the voluntary arrangements or relations of private citizens in their private dealings with each other. . . . With a corporate charter granted under general law, the Association stands on the same footing as any private corporation organized for profit or not. . . . The termination of membership in a private association, organized to maintain the standards in a profession or calling, do not, therefore, present a federal question. See Rosee v. Board of Trade of City of Chicago, 311 F2d 524 (7th Cir 1963). In a case involving an attack on the accreditation actions of this same Association, the court declared, "[I]t is vain to appeal to a constitutional bill of rights, for such bills are intended to protect the citizen against oppression by the government, not to afford protection against one's own agreements." State of North Dakota by Langer v. North Cent. Ass'n, 23 F Supp 694, 700 (ED Ill 1938), affirmed, 99 F2d 697 (7th Cir 1938). The term "due process" is thus something of a misnomer in this field.

Plaintiffs next contend that their free speech rights should be protected by this court. They claim that

there is state action infringing on their constitutional rights since Certified is chartered by the State of Illinois and authorized to do business in Illinois. However, this same argument has been specifically rejected in Van Daele v. Vinci, 294 F Supp 71 (ND Ill 1968), and Rosee v. Board of Trade of City of Chicago, 311 F2d 524 (7th Cir 1963). In Van Daele, supra, 74, the court in discussing plaintiff's claim stated:

> [T]he defendants did not act under color of law, required expressly by § 1983 and held applicable also to § 1985(3). See Collins v. Hardyman, 341 US 651, 71 S Ct 937, 95 L Ed 1253 (1951); Huey v. Barloga, 277 F Supp 864 (ND Ill 1967). The defendants are private individuals and a private corporation. The only factual basis the plaintiff asserts in support of his allegation of state action is that Certified received its charter under state law and that it acted pursuant to bylaws adopted under its charter in the expulsion action. Merely acting under a state license is not state action within the context of the civil rights acts. Weyandt v. Mason's Stores, Inc., 279 F Supp 283 (WD Pa 1968).

 In the instant case we find no state action which would allow us to protect plaintiffs' free speech rights.

 It is next argued by plaintiffs that they may assert defensively the First Amendment free speech clause, through the Fourteenth Amendment, in the same manner as advanced in New York Times Co. v. Sullivan, 376 US 254 (1964). In New York Times Co., the Alabama courts applied a state rule of law which petitioners claimed imposed invalid restrictions on their constitutional freedoms of speech and press. In the instant case plaintiffs do not claim that any "state rule of law" infringes on their rights. Rather, plaintiffs argue that it was the action of Certified's Board which violated their

First Amendment rights. We find that the expulsion proceedings conducted by the Board were private in nature and that the Board's action did not pose a question of infringement of plaintiffs' First Amendment rights. See Rosee v. Board of Trade of City of Chicago, supra, 526.

It is also urged by plaintiffs that court enforcement of the Board's resolutions would amount to state action under the principles announced in Shelley v. Kraemer, 334 US 1 (1948). However, as heretofore determined by us, the proceedings affecting plaintiffs' membership status were private in nature and did not constitute state action or action under color of state law.

Defendants also contend that the injunctions were improperly issued since plaintiffs had not shown any proper grounds for an injunction. They argue that any damage which might have been sustained by plaintiffs was ascertainable and that plaintiffs had not proven irreparable injury. However, since we have determined to reverse the injunction orders, we need not consider this contention.

The order of September 30, 1969, granting the permanent injunction, and the order of May 5, 1969, granting the temporary injunction, which became merged into the judgment of September 30, are reversed.

Reversed.

STAMOS, P. J. and ENGLISH, J., concur.