**Karen E. CARDOZA,
Plaintiff-Appellant,**

v.

**COMMODITY FUTURES TRADING COMMISSION and Board of Trade of the City of Chicago, Inc., an Illinois corporation, Defendants-Appellees.**

**No. 84–1812.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1985.
Decided July 23, 1985.

John A. Dienner, III, Pierce Lydon Griffin & Montana, Chicago, Ill., for plaintiff-appellant.

David R. Merrill, Asst. Gen. Counsel, Commodity Futures Trading Com'n, Washington, D.C., for defendants-appellees.

Before CUMMINGS, Chief Judge, BAUER and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

This is an appeal by plaintiff Karen E. Cardoza from the district court's grant of defendant Commodity Futures Trading Commission's motion for summary judgment and defendant Board of Trade's motion to dismiss, 588 F.Supp. 621. Cardoza asserts that the district court utilized an erroneous standard in reviewing the Commodity Futures Trading Commission's decision not to review a commodities exchange disciplinary action. She further challenges the lower court's determinations regarding the time of accrual of her alleged cause of action versus the Board of Trade and concerning the correct statute of limitations applicable to her action. We affirm the judgment of the district court, although on grounds different from those utilized below with respect to the defendant Board of Trade.

## I

Plaintiff Karen Cardoza brought suit against the Board of Trade of the City of Chicago, Inc. ("CBOT") and the Commodity Futures Trading Commission ("CFTC") on May 27, 1983. The action arose out of the CBOT's October 20, 1981, final refusal to allow Cardoza to exercise an option to purchase a CBOT associate membership. The plaintiff appealed the refusal to the CFTC on November 11, 1981, but that body declined to review the CBOT action, so notifying Cardoza by letter of July 28, 1982 (Plaintiff's App. B). The complaint seeks an order requiring the CFTC to hear her appeal, declaratory and injunctive relief which would permit her to exercise her option to purchase an associate membership from the CBOT or grant her a one-year extension of her expired floor activity permit, and an award of $250,000 in actual and punitive damages for injuries allegedly inflicted by the defendants (p. 10 of R. Item 1). A pendent claim of breach of contract against the CBOT is included in the complaint.

The Board of Trade is a commodity and financial futures exchange designated as a "contract market" under the Commodities Exchange Act ("CEA"), 7 U.S.C. § 7. Plaintiff obtained a "floor activity permit" from the CBOT on June 27, 1978, which allowed her to trade solely in commercial paper futures contracts. In order to induce interest in obtaining such limited permits, the CBOT decided to offer permit holders the option of purchasing an associate membership on the exchange at a substantial discount, if the holder could demonstrate that "he has traded at least one Commercial Paper contract for himself or others on at least 125 business days in each of the three one year periods." CBOT Rule 225.00.[1]

---

1. Rule 225.00 provides in pertinent part:
   [A]t the end of three years after the first Commercial Paper Permit is sold, the Association shall issue for a period of twelve (12) months thereafter an Associate Membership to any Commercial Paper Permit holder, hereunder, who has met the following conditions:
   (1) The Permit holder must pay $40,000 less Permit fees paid in accordance with Regulation 225.04; and

On September 29, 1978, three months after Cardoza received her permit, the CBOT sent a notice to all permit holders stating that henceforth only trades personally executed by the permit holder on the floor of the exchange would qualify as trades necessary to meet the requirement of Rule 225.00 (CBOT App. A). There is no dispute that under this interpretation Cardoza is not entitled to an option to purchase an associate membership. In 1979 Cardoza requested a one-year extension of her permit, but this request was denied although another holder's request was granted (Br. 8 and CBOT App. B). Upon the expiration of her limited permit in 1981, Cardoza sought to exercise her option but was refused by both the CBOT Membership Committee and its Board of Directors (Br. 6–7). As noted, the CFTC declined to review the CBOT's decision (Plaintiff's App. B). Cardoza then filed suit in the Northern District of Illinois against the CBOT and CFTC but voluntarily withdrew the action on February 15, 1983. Plaintiff filed an action solely against the CBOT in the Circuit Court of Cook County on February 10, 1983. The Circuit Court dismissed plaintiff's suit on May 29, 1983, explaining that her claim was preempted by federal law and that Illinois courts have refused to adjudicate disputes arising under the CBOT's membership rules (CBOT App. G). Cardoza reinstituted her federal action against both defendants on May 27, 1983.

Judge Aspen entered judgment for defendants on March 26, 1984, in response to their respective motions for summary judgment and dismissal. With respect to the CFTC he ruled that its decision not to review an exchange disciplinary action is subject to judicial review but that its refusal to review was, under the relevant abuse of discretion standard (5 U.S.C. § 706(2)(A)), within the range of its authority and discretion (pp. 6, 9 of the district court opinion at Plaintiff's App. D). With regard to the CBOT, the court held that Cardoza's complaint stated an implied cause of action against the exchange under the CEA, but that the claim was barred by the three-year Illinois statute of limitations applicable to the implied action (id. at 11–12). Judge Aspen also dismissed plaintiff's pendent state law claim (id. at 12). 588 F.Supp. 621.

## II

Before reviewing the district court's decision, we must preliminarily address the question whether the notice of appeal filed by plaintiff on May 14, 1984, was so defective as to deprive this Court of subject matter jurisdiction over most of the issues in this case, including all issues concerning the CFTC. The Commission argues in its brief that plaintiff has failed to meet the specificity requirement of Rule 3(c), Fed.R. App.P., that "the notice of appeal * * * shall designate the judgment, order or part thereof appealed from." Since the notice of appeal exclusively focuses on the district court's May 2 order denying her motion for reconsideration [2] and because the motion for reconsideration in turn in no respect challenges the district court's March 26 order granting the CFTC's motion for summary judgment (R. Item 27), the Commission first asserted that we are without jurisdiction to review the grant of summary judgment in its favor (Br. 7–9). The CFTC endured a change of heart, however, and at oral argument urged us to hear the appeal of Cardoza's claim against it, noting that it had suffered no prejudice from plaintiff's inadvertence. This sudden turnabout re-

---

(2) The Permit holder must demonstrate, by account activity statements or brokerage reports, that he has traded at least one Commercial Paper contract for himself or others on at least 125 business days in each of the three one year periods, starting from the day the Permit holder is granted his permit; and

(3) The Permit holder has exercised his option to purchase an Associate Membership within six (6) months of the expiration of his Permit.

2. The notice of appeal states in full:

### NOTICE OF APPEAL

PLEASE TAKE NOTICE that on this date the plaintiff Karen E. Cardoza hereby appeals from this court's final order dated May 2, 1984 wherein the plaintiff's Motion to Reconsider the dismissal of her causes of action was denied.

Dated: May 14, 1984

sulted from the Commission's expressed desire to have us decide, for better or for worse, the question of judicial reviewability of CFTC decisions not to review an exchange's disciplinary action.

The Supreme Court on a number of occasions has indicated its strong disfavor with the dismissal of an appeal for lack of subject matter jurisdiction because of a failure to designate properly the judgment appealed from in compliance with Fed.R.App.P. 3(c). See *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222; *State Farm Mutual Automobile Insurance Co. v. Palmer*, 350 U.S. 944, 76 S.Ct. 321, 100 L.Ed. 823; *United States v. Arizona*, 346 U.S. 907; 9 MOORE'S FEDERAL PRACTICE ¶ 203.18 (1985). In *Foman* the Court chided the First Circuit for ruling that it lacked jurisdiction to review an appeal from the district court because one notice of appeal from the judgment was premature and another notice referred solely to the denial of a motion to vacate and amend judgment:

> Not only did both parties brief and argue the merits of the earlier judgment on appeal, but petitioner's statement of points on which she intended to rely on appeal, submitted to both respondent and the court pursuant to rule, similarly demonstrated the intent to challenge the dismissal.
>
> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 [78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)]. The Rules themselves provide that they are to be construed "to secure the just, speedy and inexpensive determination of every action."

371 U.S. at 181–82, 83 S.Ct. at 229–30.

■ The general rule which has developed is that an error in designating the judgment or a part thereof will not result in a loss of appeal if the intent to appeal from the judgment complained of may be inferred from the notice and if the appellee has not been misled by the defect. *Hawkeye-Security Insurance Co. v. Schulte*, 302 F.2d 174, 176 (7th Cir.1962); *Holz v. Smullan*, 277 F.2d 58, 61 (7th Cir.1960); 9 MOORE'S FEDERAL PRACTICE ¶ 203.18 (1985). There is no question here that defendant CFTC has not been misled or prejudiced by the defect (contrast *Ruckman & Hansen, Inc. v. Contracting & Material Co.*, 328 F.2d 744, 749 (7th Cir.1964) (appellees never notified of appeal and never appeared nor were represented before the Court)); but try as we may it is difficult to infer an intent to appeal from the entire judgment from this notice of appeal (*supra* note 2). A more specific rule, however, has developed with regard to a notice of appeal which designates an appeal from a denial of a Rule 59(a) motion rather than from the proper judgment itself. We adopted this rule in *Hennessy v. Schmidt*, 583 F.2d 302, 306 (1978), where the Court stated "when an appeal is mistakenly taken from the order denying the motion for a new trial when it should have been from the judgment" the error will be viewed as harmless and the appeal will be treated as taken from the judgment "subject to the following qualifications: the judgment from which the appellant intended to appeal must be final; it must be clear what judgment is involved; the motion and appeal must have been timely made; and there must be no prejudice to the other party." See *Crowel v. Administrator of Veterans' Affairs*, 699 F.2d 347 (7th Cir.1983).

■ Here plaintiff appealed from a denial of a Rule 59(e) motion to alter or amend the judgment, but denials of both Rule 59(a) and 59(e) motions normally are not separately appealable although they are both reviewable in conjunction with the judgment to which they relate. See *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 701 (2d Cir.1972), certiorari denied, 409

U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139; *Maryland Tuna Corp. v. The MS Benares*, 429 F.2d 307, 317–18 (2d Cir.1970); 6A MOORE'S FEDERAL PRACTICE ¶ 59.15[1], [4] (1985).[3] Since denials of Rule 59(a) and 59(e) motions are not separately appealable, appeals therefrom do not raise the same inference of an intent to appeal from less than all of a judgment as is more fairly inferred from an appeal from a separately appealable portion of a judgment. See 9 MOORE'S FEDERAL PRACTICE ¶ 203.18 (1985). Perhaps the proper inference here is that plaintiff's counsel could not have been so remiss as to have attempted to appeal from the Rule 59(e) motion denial, but was careless enough to fail to appeal specifically from the judgment. Rule 59(a) and 59(e) motions also have the same effect on the finality of the judgment for purposes of appeal, 6A MOORE'S FEDERAL PRACTICE ¶ 59.15[1], [4] (1985), and both must be filed within ten days after the entry of judgment. Fed.R.Civ.P. 59(b), (e).

There is no reason not to apply our *Hennessy* rule in this context. In view of the circumstances of this appeal, including the fact that both parties briefed and argued, and plaintiff stated in her statement of questions presented for review, issues not raised in the reconsideration motion, see *Foman, supra*, and in view of plaintiff's counsel's explanation at oral argument of his mistaken belief that appeal from the denial of the reconsideration motion was the appropriate manner of appealing from the entire judgment, we conclude that plaintiff mistakenly appealed from the reconsideration motion rather than from the judgment entered on March 26, 1984. None of the four qualifications listed in *Hennessy* (*supra* pp. 1546–47) apply here to bar application of the general rule.

■ Other Circuits have treated an appeal from a timely motion for reconsideration as an appeal from the underlying judgment with less hesitation than we show today, see *United States v. Walker*, 601

F.2d 1051, 1058 (9th Cir.1979); *Maryland Tuna Corp.*, 429 F.2d at 317–18 (2d Cir. 1970), including a case involving more than one defendant. See *Woodham v. American Cystoscope Co.*, 335 F.2d 551, 555–56 (5th Cir.1964). Where it is clear that a party intends to appeal from only part of a judgment, see *Bach v. Coughlin*, 508 F.2d 303, 306 (7th Cir.1974), it is proper that the appeal be so limited, see 9 MOORE'S FEDERAL PRACTICE ¶ 203.18 (1985), but such is not the present case. Accordingly, we construe the notice of appeal as seeking review of the entire judgment entered on March 26.

### III

The district court was correct in ruling that CFTC decisions not to review disciplinary actions by an exchange are subject to judicial scrutiny and in determining that the scope of judicial review under the relevant "arbitrary, capricious or abuse of discretion" statutory standard (5 U.S.C. § 706(2)(A)) is quite narrow in this context. We also concur in the lower court's conclusion that the CFTC action in the present case was not improper under the above standard.

The CFTC is charged with regulation of the nation's commodity futures trading pursuant to the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* That body has the power to review, approve or reject nearly all exchange rules and may review any membership or denial of access actions taken by futures exchanges against their members. As stated in 7 U.S.C. § 12c:

(2) The Commission may, in its discretion and in accordance with such standards and procedures as it deems appropriate, review any decision by an exchange whereby a person is suspended, expelled, otherwise disciplined, or denied access to the exchange. In addition, the Commission may, in its discretion and upon application of any person who is

---

**3.** If we do not treat plaintiff's appeal from the reconsideration motion as from the judgment,

she has no appeal at all.

adversely affected by any other exchange action, review such action.

(3) The Commission may affirm, modify, set aside, or remand any exchange decision it reviews pursuant to paragraph (2) of this section, after a determination on the record whether the action of the exchange was in accordance with the policies of this chapter. Subject to judicial review, any order of the Commission entered pursuant to paragraph (2) of this section shall govern the exchange in its further treatment of the matter.

Plaintiff claims that the scope of review applied by the district court was too narrow and that review of the CFTC denial under the factors listed in 17 C.F.R. § 9.37 (1982) (*infra* note 9) reveals that the Commission committed an abuse of discretion in refusing to hear Cardoza's appeal (Br. 20–26). The CFTC argues for affirmance of the district court's summary judgment grant on the ground that the Commission's decision not to review an exchange disciplinary action constitutes "agency action committed to agency discretion by law" under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and as such is not subject to judicial scrutiny.[4] We will discuss this contention before considering the scope of review issue.

The Supreme Court recently grappled with the troublesome question of what constitutes "agency action committed to agency discretion by law" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2). *Heckler v. Chaney*, —— U.S. ——, 105 S.Ct. 1649, 84 L.Ed.2d 714. Here, as in *Chaney*, Congress granted an agency authority to exercise discretion in a decision-making capacity. In *Chaney* the Court considered 21 U.S.C. § 372, providing

that "[t]he Secretary [of the Food and Drug Administration] is authorized to conduct examinations and investigations." In the present case we must scrutinize § 8c(2) of the CEA, 7 U.S.C. § 12(c)(2), which states that "[t]he [CFTC] may, in its discretion * * *, review any decision by an exchange whereby a person is suspended, expelled, otherwise disciplined or denied access to the exchange." The question is whether such exercise of discretion falls within the "committed to agency discretion by law" language of § 701(a)(2) in which case the APA precludes judicial review of such action. See 5 U.S.C. § 701(a).

The key provisions governing the availability of judicial review of "agency action" under the APA are §§ 701(a), 702, and 706. Section 702 provides that "[a] person * * * adversely affected or aggrieved by agency action * * * is entitled to judicial review thereof." Section 701 exempts from the judicial review provisions of the APA cases where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Yet Section 706(2)(A) provides as the primary standard of review authority to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Therein lies the paradox (noted by the Supreme Court in *Chaney*, —— U.S. at ——, 105 S.Ct. at 1654) of the statute's authorizing setting aside agency action amounting to an abuse of discretion, yet exempting from review agency action committed by law to agency discretion. The *Chaney* Court asserted that it could meaningfully construe § 701(a)(2), but appeared to rely on the severely criticized[5] "no law to apply" stan-

---

4. Contrary to plaintiff's assertion, the CFTC did not need to file a cross-appeal to raise the reviewability issue since as appellee the CFTC may defend a judgment on any ground. See 9 MOORE'S FEDERAL PRACTICE ¶ 204.11[3] (1985). Our recent decision concerning the CFTC in *Korach v. Chicago Mercantile Exchange*, 747 F.2d 414 (7th Cir.1984), did not consider the appropriateness of judicial scrutiny of CFTC decisions not to review. In *Korach*, the Court assumed that the CFTC had in fact decided to review the case before it and correctly indicated that where the

CFTC hears an appeal of an exchange disciplinary action, judicial review of the decision is authorized. 747 F.2d at 415.

5. Professor Davis writes that:
   Of major importance to the law of reviewability is the idea that courts should not review administrative action when "there is no law to apply." *The idea is flagrantly and obviously unsound, because, whether or not law applies, a judicial check is often needed to assure that administrative action is not arbitrary, capri-*

dard stated in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[6] The Court did not directly utilize the "no law to apply" test to resolve the case, but instead analogized the doctrine of prosecutorial discretion to the issue of agency enforcement actions and held that decisions not to enforce regulatory statutes are unsuitable for judicial review. —— U.S. at ——, 105 S.Ct. at 1656. Such decisions in the Court's view involve a "complicated balancing of a number of factors which are peculiarly within its expertise" and merit a presumption of unreviewability. *Id.*

The "no law to apply" test, the Court revealed, was relevant only to the extent that the presumption of unreviewability could be rebutted or overcome by a showing that "there is 'law to apply'" or that Congress "has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion." —— U.S. at ——, 105 S.Ct. at 1657. Thus we read *Chaney* solely as reaffirming the recognized position that § 701(a)(2) applies in certain circumstances where courts are unqualified to decide whether an agency has abused its discretion. See 5 K. DAVIS, *supra*, § 28:10, p. 308. *Chaney* added to the list of agency actions unsuitable for judicial review, such as State Department action in foreign affairs, and Federal Reserve Board decisions setting interest rates, the class of agency nonenforcement decisions.

■ The CFTC's decision not to review is sufficiently different from an agency nonenforcement decision that *Chaney* does not require application of a presumption of unreviewability to the present situation. This Court is qualified to review the agency action in question and such CFTC denials of review are not unsuitable for judicial scrutiny. Moreover, whereas the *Chaney* Court ruled that it would be contrary to Congressional intent to allow judicial review of agency nonenforcement decisions, —— U.S. at ——, 105 S.Ct. at 1659, it is fair to say that here a complete lack of judicial scrutiny of CFTC decisions not to review would frustrate Congressional intent.

■ It is clear from the CEA that Congress intended that there be judicial scrutiny of cases where the CFTC exercised its discretion and took review of exchange disciplinary actions. The Act expressly states: *"Subject to judicial review,* any order of the Commission entered pursuant to paragraph (2) of this section [authorizing discretionary review of exchange disciplinary actions] shall govern the exchange * * *."* 7 U.S.C. § 12c(3) (emphasis supplied). The Commission is authorized to "affirm, modify, set aside or remand any exchange decision it reviews." *Id.* Without at least some judicial review of CFTC deni-

*cious, or an abuse of discretion* [emphasis in original].

Even though the "no law to apply" idea has become a dominant force in the law of reviewability, even though hundreds of decisions have been based on the idea, and even though the idea has become deeply embedded, *the idea has no foundation in any statute, no foundation in any legislative history, and no foundation in any holding of the Supreme Court* [emphasis in original].

The only foundation of the "no law to apply" idea is: (a) a dictum, (b) which was unnecessary to the decision and pulled in the direction away from the Court's holding, (c) rested on a misquotation of a legislative committee, and (d) produced a result that is specifically the opposite of what Congress intended and clearly expressed.

5 K. DAVIS, ADMINISTRATIVE LAW § 28:8, p. 290 (1984).

6. There the Court stated that the "narrow exception" of § 701(a)(2) is applicable only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply'" (quoting S.REP. No. 752, 79th Cong., 1st Sess., 26 (1945)). 401 U.S. at 410, 91 S.Ct. at 820. *Chaney* quoted this portion of the *Overton Park* decision and rephrased the explanation, stating that § (a)(2) prohibits judicial review where "no meaningful standard" or "no judicially manageable standar[d]" exists for evaluating an agency's exercise of discretion. —— U.S. at ——, 105 S.Ct. at 1655. The Court did not mete out the precise meaning of the phrases "no meaningful standard" and "no judicially manageable standar[d]" nor did it distinguish the substantial number of cases which do not make reviewability depend on the "no law to apply" inquiry. See 5 K. DAVIS, ADMINISTRATIVE LAW § 28:8, p. 296.

als of review, the Commission could effectively shield from review its decisions to affirm exchange action on the merits by simply considering the case but refusing the appeal. Unlike the issue of agency nonenforcement decisions, see ― U.S. at ―, 105 S.Ct. at 1658–1659, the statutory framework embodied in § 8c of the Act contemplates the existence of a class of CFTC decisions not to act which are judicially reviewable. We see no need to interpret § 8c as granting the CFTC discretion to deny review for any arbitrary, or improper reason (such as a desire to avoid Congressionally mandated judicial review). See *Board of Trade v. Commodity Futures Trading Commission,* 605 F.2d 1016, 1021 n. 6 (7th Cir.1979), certiorari denied, 446 U.S. 928, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). Instead, we read it as giving the Commission broad and unreviewable discretion to deny review of frivolous, unimportant and repetitive appeals.

▮ Moreover, unlike the *Chaney* situation, there are meaningful standards to review the relevant CFTC actions. First, the CFTC has issued a regulation, 17 C.F.R. 9.30 (1982), which sets forth five specific factors that the agency may consider in its determination of whether to grant or deny review of exchange action.[7] It is well settled "that regulations validly prescribed by a government administrator are binding upon him as well as the citizen, and that this principle holds even when the administrative action under review is discretionary in nature." *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403; see *Vitarelli v. Seaton,* 359 U.S. 535, 539 (J. Harlan for the majority), 546–547, 79 S.Ct. 968, 972, 976–977, 3 L.Ed.2d 1012

(J. Frankfurter, concurring and dissenting); *Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 504, 98 L.Ed. 681; *Dana Corp. v. ICC,* 703 F.2d 1297, 1300 (D.C.Cir. 1983); *United States v. Fitch Oil Co.,* 676 F.2d 673, 676 (T.E.C.A.1982); *Way of Life Television Network, Inc. v. FCC,* 593 F.2d 1356, 1359 (D.C.Cir.1979); 3 B. MEZINES, J. STEIN & J. GRUFF, ADMINISTRATIVE LAW § 1303[1] (1985). In *Chaney,* the respondents could not even point to a binding agency rule of the FDA as providing a guideline for informed judicial review. ― U.S. at ―, 105 S.Ct. at 1658. Several of the factors, particularly § 9.30(a),(d) and (e), are not factors "peculiarly within [the] expertise" of the CFTC, *Chaney,* ― U.S. at ―, 105 S.Ct. at 1656, and it would seem that an aggrieved party could make a strong showing on the applicability of the five factors, advisory though they may be, to indicate an abuse of discretion.

It is not significant in our view that the regulation does not expressly require the Commission to consider these factors, but instead states that it "may" consider them. The use of the term "may" does not indicate that the Commission is free to ignore factors that in the past it has designated as highly relevant. Nor should the use of such discretionary language in a regulation exempt an agency from its obligation to follow its rules or policies upon which the public justifiably has come to rely.

Second, an exchange under the CEA is bound by statute to abide by its own rules approved by the CFTC:

[e]ach contract market shall—

\*      \*      \*      \*      \*      \*

(c) The precedential value of a Commission decision on the issues presented;

(d) Whether there is substantial divergence among the exchanges in their treatment of similar matters;

(e) Whether it appears from the application or other information available to the Commission that the exchange action may not have been taken in accordance with any of the standards contained in § 9.37(b); or

(f) Any other factors which the Commission deems relevant.

---

7. 17 C.F.R. § 9.30 states in pertinent part:

[t]he determination to review any exchange disciplinary or other adverse action is a matter committed to the Commission's discretion. In determining whether to grant or deny review of any exchange disciplinary or other adverse action, the Commission may consider such factors as:

(a) Whether the issues presented involve an important policy under the Act;

(b) The extent to which a review proceeding would interfere with the efficient disposition of other Commission business;

(8) enforce all bylaws, rules, regulations, and resolutions * * * that have been approved by the Commission * * *.

7 U.S.C. § 7a(8).[8]

Violations of such CFTC-approved exchange rules would indicate that CFTC review is at least potentially appropriate. Here plaintiff has asserted a violation of Rule 225.00 (*supra* note 1), which was issued by the exchange and approved by the Commission.

Finally, judicial scrutiny of whether the CFTC abused its discretion in denying review of an exchange disciplinary action, particularly in view of the existence of the above-listed guidelines, is the type of traditional judicial function which courts are qualified to exercise. Such review of an agency decision not to exercise its own quasi-judicial authority is quite different from the type of judicial review sought in *Chaney*, which involved review of the manner in which an agency, exercising its expertise over a given subject matter, chooses to regulate, in the first instance, the area over which Congress has given it discretionary authority.

■ Having explained the inapplicability of *Chaney*, our inquiry must begin with the general rule set forth in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should courts restrict the access to judicial review." See *Board of Trade*, 605 F.2d at 1022. Our decision requires us to examine the language, structure, legislative history and nature of § 8c in gauging Congressional intent. *Id.* We agree with the district court that there is an absence of clear legislative intent to limit judicial review of these CFTC decisions (pp. 4–5 of the district court opinion at Plaintiff's App. D). The notable lack of legislative history cited

by defendant CFTC supporting its position of no judicial review adequately distinguishes this case from *Board of Trade, supra*, where we relied heavily on the extensive legislative history of § 8a(9) of the CEA, 7 U.S.C. § 12a(9), in ruling that the CFTC's determination of the existence of an emergency under the CEA is an unreviewable agency action committed to agency discretion by law under 5 U.S.C. § 701(a)(2). 605 F.2d at 1023–1025. The only legislative history cited by the CFTC, a Conference Report, S.REP. NO. 1194, 93d Cong., 2d Sess. 38–39 (1974) (which explains that the Conference Committee chose to make the newly created CFTC authority to review exchange disciplinary actions discretionary as opposed to mandatory as had the Senate version of the 1974 amendment of the CEA) is merely descriptive of the language of § 8c. As noted previously, *supra* p. 1549, the statutory framework of § 8c indicates that Congressional intent regarding judicial scrutiny of CFTC review of exchange action will be forwarded by allowing limited judicial scrutiny of CFTC denials of review.

The nature of the Commission's § 8c denial of review determination is not such that it is not amenable to traditional judicial review. Contrast *Board of Trade*, 605 F.2d at 1023 (CFTC determination of an emergency is "taken in the context of carefully defined emergencies [involving] unforeseen situations which are not amenable to traditional administrative and injunctive enforcement remedies"). Although the language of § 8c indicates a clear grant of discretion to the CFTC regarding a decision to undertake review, the existence of such language granting discretion is not dispositive of a Congressional intent to bar judicial review of the exercise of said discretion, and the Supreme Court has approved of judicial review for agency abuse of discretion in the face of such language on

---

**8.** This Section is presented as it was amended on January 11, 1983. Prior to this date the provision, though narrower, still bound the exchange to follow Rule 225.00 in question (*supra* note 1) and stated in pertinent part:
[e]ach contract market shall—

* * * * * *

(8) enforce all bylaws, rules * * * which relate to * * * trading requirements, and which have been approved by the Commission * *.

various occasions. See *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (allowing review under 29 U.S.C. § 482, which states that "[t]he Secretary shall investigate such complaint, and *if he finds probable cause* to believe a violation has occurred * * * he shall * * * bring a civil action" (emphasis supplied)); *Tooahnippah v. Hickel*, 397 U.S. 598, 606, 607, 90 S.Ct. 1316, 1321, 1322, 25 L.Ed.2d 600 (allowing review under 25 U.S.C. § 373 which states that the "Secretary of the Interior may approve or disapprove the will * * * 'in his discretion'" and noting that language such as "in his discretion" does not "cloa[k] the Secretary's actions with immunity from judicial review "); *Barlow v. Collins*, 397 U.S. 159, 165–167, 90 S.Ct. 832, 836–838, 25 L.Ed.2d 192 (1970) (allowing review in the face of 16 U.S.C. § 590d(3), which authorizes the Secretary of Agriculture "to prescribe such regulations as he may deem proper"); *Foti v. INS*, 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (review allowed in the face of 8 U.S.C. § 1254 which states "the Attorney General may, in his discretion, suspend deportation"); *Hintopoulos v. Shaughnessy*, 353 U.S. 72, 76–77, 77 S.Ct. 618, 620–21, 1 L.Ed.2d 652 (also approving of review under 8 U.S.C. § 1254). In sum, the CFTC has not made a clear and convincing showing of Congressional intent to bar judicial review of CFTC denials of review.

■ Assuming reviewability, both parties agree that the standard set forth in 5 U.S.C. § 706(2)(A), that agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law," is the appropriate one to apply in the instant case (Br. 24;

CFTC Br. 16; p. 6 of the district court opinion at Plaintiff's App. D). The sole task of the reviewing court is to determine whether the agency action was within its range of authority and discretion, and whether there has been a clear error of judgment. *Overton Park*, 401 U.S. at 415–416, 91 S.Ct. at 823–24; *Secretary of Labor v. Farino*, 490 F.2d 885, 889–90 (7th Cir. 1973).

■ The district court correctly ruled that § 8c grants the CFTC great discretion in deciding to grant or deny review of exchange disciplinary or membership action. Nevertheless plaintiff contests the district court's reliance upon 17 C.F.R. § 9.30, *supra* note 7, and the suggested relevant factors listed therein as delineating the CFTC's scope of authority and argues, as she did below, that the CFTC's authority to deny review is governed by the mandatory standards of review set forth in 17 C.F.R. § 9.37(b).[9]

In rejecting plaintiff's argument, there is little to add to Judge Aspen's observation that, according to its own terms, § 9.30 lists factors the Commission may consider initially in determining whether to review a disciplinary action, whereas § 9.37(b) lists the standards required to be applied once the CFTC has decided to review an exchange disciplinary action (pp. 8–9 of the district court opinion at Plaintiff's App. D). Although plaintiff claims this reading of the regulations produces a "bizarre result" (Br. 26), there are numerous situations where the CFTC might determine that a particular exchange action could conceivably violate the standards of § 9.37(b), but conclude that review by the Commission of the case would not materially aid the CFTC

---

9. 17 C.F.R. § 9.37(b) states in pertinent part: [t]he standards for Commission review of the disciplinary action or other adverse action shall be:

(1) Whether the exchange disciplinary action or other adverse action was taken in accordance with the rules of the exchange;

(2) Whether fundamental fairness was observed in the conduct of the disciplinary proceeding or the proceeding resulting in other adverse action;

(3) Whether there is substantial evidence in the record to support a finding that there has been a violation of the rules of the exchange or that the exchange was otherwise justified in taking the disciplinary or other adverse action;

(4) Whether the disciplinary or other adverse action taken by the exchange was reasonable in light of all circumstances; and

(5) Whether the disciplinary action or other adverse action otherwise accords with the policies of the Act.

in carrying out its regulatory function under the CEA. A denial of review under such circumstances would be well within the authority granted the CFTC in 7 U.S.C. § 12c(2). Apart from § 9.30 the scope of the CFTC's authority is also limited by "[t]raditional principles of rationality and fair process." *Chaney*, —— U.S. at ——, 105 S.Ct. at 1667 (J. Marshall, concurring); see *Board of Trade*, 605 F.2d at 1021 n. 6. Review may not be denied, for example, on the basis of a bribe.

As Judge Aspen noted, the CFTC's letter to Cardoza plainly indicates that it exercised its discretion not to hear her appeal in accordance with the factors set forth in § 9.30 and that no clear error of judgment occurred (p. 9 of the district court opinion at Plaintiff's App. D). Plaintiff makes no attempt to contradict the CFTC's finding that none of the § 9.30 factors favored review in this case. She solely notes in her statement of facts that another limited permit holder had been granted the one-year extension of the limited permit denied Cardoza (Br. 8). This fact alone does not merit judicial intervention, nor does the arguable violation of Rule 225.00 in light of the Board of Trade's notice to Cardoza early in the first year of her permit which sought to clarify any ambiguity in the Rule (*supra* p. 1545). Finally Cardoza alleges no circumstances which violate notions of rationality and fair process. Accordingly, we conclude that the CFTC's denial of review in the instant case does not constitute an abuse of discretion.

### IV

█ The district court ruled that an implied cause of action exists under the CEA for an exchange's failure to follow any of its own rules contrary to § 5a(8) of the Act, 7 U.S.C. § 7a(8) (p. 11 of the district court opinion at Plaintiff's App. D). Thus it held that Cardoza had alleged a valid claim under federal law by asserting that the CBOT breached Rule 225.00. We disagree with the district court's expansive ruling and hold that no federal implied cause of action exists to encompass Cardoza's claim against the CBOT.

In reaching its ruling the district court relied exclusively on the recent Supreme Court case of *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182. In *Curran* the Court held that exchanges "can be held accountable for breaching their statutory duties to enforce their own rules prohibiting price manipulation." *Id.* at 394, 102 S.Ct. at 1847. The district court recognized that Rule 225.00 (*supra* note 1) does not involve price manipulation (p. 11 of the district court opinion at Plaintiff's App. D), but reasoned that since *Curran* had specifically noted Congress' failure to amend the CEA to abolish existing private rights of action for violation of exchange rules, an implied cause of action exists for every violation of exchange rules (*id.*).

█ Normally the issue of whether an implied cause of action exists under a federal statute is governed by the four-part inquiry of *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26,[10] and this inquiry ultimately must focus on the intent of Congress. *Curran*, 456 U.S. at 377, 102 S.Ct. at 1838; *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500. The inquiry into Congressional intent was specialized in *Curran* because it involved a situation where a remedy implied from a statute already had been widely recognized by courts and the issue was "whether Congress intended to preserve the pre-existing remedy." *Curran*, 456 U.S. at 378–79, 102 S.Ct. at 1839–40. The Court noted that at the time of the "comprehensive amendments to the CEA, the federal courts routinely and consistently had recognized an implied cause of action * * * for viola-

---

**10.** The *Cort* test requires inquiries into 1) whether plaintiff was a member of the class for whose especial benefit the statute was enacted, 2) whether there is any explicit or implicit indication of legislative intent to create or deny the remedy, 3) whether the implied cause of action would be consistent with the underlying legislative purposes and 4) whether the asserted cause of action traditionally was relegated to state law. 422 U.S. at 78, 95 S.Ct. at 2088.

tions of the provisions of the CEA rules and regulations promulgated pursuant to the statute." 456 U.S. at 379, 102 S.Ct. at 1839. Citing the rule that evaluation of Congressional action in discerning legislative intent must "take into account [the Congressional act's] contemporary legal context," the Court, in view of Congress' awareness of and failure to abolish implied causes of action under the CEA, including those brought for violations of § 5a(8), found "[t]he inference that Congress intended to preserve the *pre-existing* remedy * * * compelling." *Id.* at 387, 102 S.Ct. at 1844 (emphasis supplied).

The rationale of *Curran,* however, does not permit the assumption of Congressional intent favoring an implied private cause of action for a violation of any exchange Rule. The decision rested on the long line of cases which established a federal implied cause of action for fraudulent and deceptive trader conduct and price manipulation that violated statutory prohibitions (456 U.S. at 379 n. 62, 391, 391 n. 93, 392 n. 94, 102 S.Ct. at 1840 n. 62, 1845, 1846 n. 93 & n. 94) and exchange failure to enforce its own rules prohibiting price manipulation. 456 U.S. at 391–92, 392 n. 94, 394, 102 S.Ct. at 1845–46 n. 94, 1847. See, *e.g., Deaktor v. L.D. Schreiber & Co.,* 479 F.2d 529 (7th Cir.1973), reversed on other grounds *sub nom. Chicago Mercantile Exchange v. Deaktor,* 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344. The district court cites and we can discover no cases allowing a federal implied cause of action based on an exchange's failure to enforce its own rules regarding eligibility for membership, membership disputes or disciplinary actions. It goes far beyond the holding of *Curran* to presume Congressional intent in favor of an action arising out of an internal exchange membership dispute where not one such action was recognized by the courts at the time of the 1968 and 1974 amendments to the CEA.

In a recent Second Circuit decision, *Sam Wong & Son, Inc. v. New York Mercantile Exchange,* 735 F.2d 653 (2d Cir.1984), Judge Friendly gave the same limited reading to the *Curran* case as we do today.

There the Court held that *Curran* did not authorize a private implied cause of action for every violation of the CEA, noting that in contrast to the cases cited in footnotes 93 and 94 of *Curran* regarding fraudulent and deceptive conduct by traders and price manipulation, the decision did not cite an "established line of precedent upholding a private suit against exchanges for failure to revise their own contracts." *Wong,* 735 F.2d at 669. The court of appeals reviewed the relevant portions of the CEA, including § 5 which plaintiffs alleged the defendant New York Mercantile Exchange had violated, and decided that Congress did not intend that there be an implied cause of action against an exchange for a failure to revise its contracts, even if such failure breached an exchange duty under the CEA. *Id.* at 666–669. *Wong* observed that the *Curran* holding was expressly limited to rules prohibiting price manipulation. *Id.* at 669 n. 26.

We also note that the district court gave no weight to this Court's ruling in *Rosee v. Board of Trade,* 311 F.2d 524 (1963), certiorari denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031, that the CEA does not create an implied remedy for review of disciplinary proceedings of the Board of Trade. In *Rosee* we affirmed the district court's ruling that no jurisdiction existed to permit a federal court to hear plaintiff's claim for declaratory relief and damages which alleged a wrongful suspension from his membership on the Board of Trade. The suspension arose from plaintiff Rosee's refusal to abide by an award rendered by the CBOT's Arbitration Committee with respect to a dispute between Rosee and a CBOT member brokerage firm over the status of Rosee's account. The plaintiff contended that the suspension denied him due process of law and the equal protection of the laws, 311 F.2d at 525, and that the CBOT Arbitration Committee failed to consider the brokerage firm's violations of the CEA in resolving the dispute (Brief for Appellant at 14; *Rosee, supra*). The Court ruled that since the Board of Trade was a voluntary association and a private

corporation, with the power to "make rules and regulations proper and necessary for its government and the management of its business," 311 F.2d at 525, and the power to "admit to or to expel from membership such persons as it sees fit" pursuant to its own rules, *id.*, the CBOT's suspension of Rosee did not constitute state action or action under color of state law. *Id.* at 526.[11]

We then addressed Rosee's claim that there existed an implied cause of action under the CEA and that he had stated a valid federal claim thereunder because he had charged substantive violations of the CEA regarding fraudulent conduct by the firm with which he had a dispute and had alleged that the Arbitration Committee ignored this conduct in resolving the dispute (Brief for Appellant at 22–25; Reply Br. at 11; *Rosee, supra*). First the Court explained that the purpose of the CEA was "to remove the burden on interstate commerce caused by manipulation and market controls." *Id.* at 527. It noted that in certain instances, statutorily created rights and duties are enforceable without express statutory provisions for a judicial remedy where "federally created rights and duties [are] directly related to the purposes of the legislation," *id.* at 528, and offered as examples the implied judicial private remedies allowed under the National Labor Relations Act and the Federal Safety Appliance Act. *Id.* In those situations, we explained that the implied remedy "was deemed to be necessary for the implementation of the legislative intent in enactment of the statute." *Id.* The Court contrasted plaintiff's claim, however, joining Judge William Campbell's observation below that " 'Plaintiff's complaint relates at best only incidentally to the Commodity Exchange Act,' "

*id.* at 527, and stating that "in the instant case it does not appear that Congress contemplated the judicial remedies of injunction and accounting by means of private review of arbitration and disciplinary proceedings * * * as a means of implementing the legislative purpose of the Commodity Exchange Act in proscribing misleading and fraudulent trade transactions." *Id.* at 528.

Plaintiff's complaint in *Rosee* arose from a membership suspension whereas the present case deals with a denial of membership; however, it is fair to say that the *Rosee* Court addressed all challenges in federal court to exchange membership decisions or disciplinary proceedings. See *Rosee*, 311 F.2d at 525. Although this Court would later recognize an implied cause of action allowing recovery of damages based on individual violations of the fraud and price manipulation provisions of the CEA, see, *e.g., Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135, 142 (7th Cir.1969), certiorari denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88, and for an exchange's failure to enforce these provisions, see *Deaktor, supra,* the *Rosee* Court must have considered the benefit derived from challenges to disciplinary action involving potential CEA fraud and price manipulation violations, such as Rosee's, to be so limited or marginal in terms of fostering enforcement of the Act that such challenges by litigants were not at all necessary to implement the legislative intent behind the CEA.

This Court's analysis in *Rosee* holds valid today. The manner in which the Board of Trade reaches membership decisions and conducts disciplinary proceedings [12] has little to do with the recognized purpose of the

---

11. This Court also ruled that the policy of Illinois courts not to review Board of Trade "disciplinary proceedings" (311 F.2d at 527) did not result in a denial of due process or of the equal protection of the laws. *Id.*

12. Plaintiff raises no claim that denial of membership rights violated her constitutional rights (p. 9 of the district court opinion at Plaintiff's App. D; Complaint). We need not go as far as the *Rosee* Court in our holding today with re-

spect to the existence of an implied cause of action involving a denial of access based upon an alleged violation of the anti-price manipulation or anti-fraud provisions of the CEA. See, *e.g.,* 7 U.S.C. §§ 6b, 9, 13, 13b. Cardoza makes no such claim, but instead challenges the CBOT's application or interpretation of a Rule designed to encourage trading in a particular type of futures contract.

CEA—" 'to ensure fair practice and honest dealing on the commodity exchanges and to provide a measure of control on those forms of speculative activity which too often demoralize the markets to the injury of producers and consumers and the exchanges themselves.' " *Deaktor*, 479 F.2d at 534 (quoting H.R.REP. No. 421, 74th Cong., 1st Sess. 1 (1935)). Fair or unfair, exchange membership decisions such as Mr. Rosee's (based on his refusal to honor a CBOT arbitration award and pay a CBOT member brokerage firm the award), or such as the one in the instant case (based on Cardoza's alleged failure to effectuate the requisite number of trades to entitle her to an option to purchase a membership at a discount), have little to do with the regulation of commodity trading necessitated by certain highly speculative and sometimes unscrupulous activities. Apart from the soundness of its analysis, *Rosee* represents the law of this Circuit on this question. In view of the restrictions the Supreme Court has placed on the judicial sanctioning of implied causes of action (see *supra* p. 1553), persuasive evidence of Congressional intent regarding an implied remedy based on the CEA with respect to exchange membership or disciplinary decisions would have to exist to justify a departure from *Rosee*. We find none.

The only sources of relevant Congressional intent arising after *Rosee* are the 1968 and 1974 amendments to the CEA. In 1968 the Congress enacted § 5a(8), 7 U.S.C. § 7a(8), which "requires the exchanges to enforce their own rules." *Curran*, 456 U.S. at 382, 102 S.Ct. at 1841. See S.REP. No. 947, 90th Cong., 2d Sess. 2–3 (1968), *reprinted in* 1968 U.S.CODE CONG. & AD. NEWS 1673, 1674–1675. The district court expressly found § 5a(8) to be the CEA provision authorizing the implied cause of action (p. 11 of the district court opinion at Plaintiff's App. D), yet neither that provision nor its legislative history evinces an intent on Congress' part to allow or prohibit a private cause of action derived from the provision. See S.REP. No. 947, 90th Cong. 2d Sess. 9, *reprinted in* 1968 U.S. CODE CONG. & AD.NEWS 1673, 1681; *Curran*, 456 U.S. at 397, 102 S.Ct. at 1849 (J. Powell, dissenting). The majority opinion in *Curran* was unable to cite any such support for an implied action based on § 5a(8) (relying instead on the theory of a failure to amend in the face of existing implied actions). *Curran*, 456 U.S. at 382–83, 102 S.Ct. at 1841–42. Nor has plaintiff pointed to legislative history of § 5a(8) indicating the propriety of an implied cause of action here or made any argument that the structure of the CEA requires such an action.

In 1974 Congress, through § 8c of the Act, expressly empowered both the exchanges and the CFTC to "suspend, expel, or otherwise discipline any person who is a member of that exchange or deny any person access to the exchange," 7 U.S.C. § 12c(1)(A), and required that such membership action "be taken solely in accordance with the rules of that exchange." *Id.* It also granted the CFTC discretionary review of such actions, 7 U.S.C. § 12c(2), and permitted judicial review of any resulting CFTC orders. 7 U.S.C. § 12c(3).[13] The district court did not assert that either the plain language of § 8c or its legislative history manifested Congressional intent favoring an implied cause of action in this context. The Senate version of § 8c, H.R. 13113, 93d Cong., 2d Sess. § 216 (1974); see S.REP. No. 1131, 93d Cong., 2d Sess. 85 (1974), *reprinted in* 1974 U.S.CODE CONG. & AD.NEWS 5843, 5850, expressly stated that authority granted to the CFTC to review exchange membership action "does not deny any person the right to seek relief in the courts." The Conference Committee

---

**13.** Without explanation, the district court stated its belief that Cardoza's action was brought under § 5a(8) of the CEA and not under § 8c. Since § 8c requires that any denial of access to the exchange be undertaken in accordance with the rules of the exchange, there is no reason why plaintiff's claim would not also "derive" from § 8c. Certainly the legislative history regarding the authority of exchanges in disciplinary and membership matters and regarding judicial review thereof is relevant to whether Congress intended judicial review of exchange membership decisions via a federal implied cause of action.

deleted this provision, but stated in its report that "the availability of such [CFTC] review procedure will not affect rights that are otherwise available to persons adversely affected by exchange action." H.R.REP. No. 1383, 93d Cong., 2d Sess. 38–39 (1974), *reprinted in* 1974 U.S.CODE CONG. & AD. NEWS 5894, 5900. In view of the "contemporary legal context" of which we are to assume Congress was aware, *Curran,* 456 U.S. at 379, 102 S.Ct. at 1839, which includes the absence of any cases recognizing a federal implied cause of action challenging a membership or disciplinary decision, the Senate provision and the Conference Committee remarks should be interpreted as referring to the limited body of state law existing at the time regarding enforcement of the bylaws of voluntary associations, including those relating to disciplinary proceedings. See *Marjorie Webster Junior College, Inc. v. Middle States Association of Colleges and Secondary Schools, Inc.,* 432 F.2d 650 (D.C.Cir.1970), certiorari denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (pendent claim); *VanDaele v. Vinci,* 51 Ill.2d 389, 282 N.E.2d 728 (1972), certiorari denied, 409 U.S. 1007, 93 S.Ct. 438, 34 L.Ed.2d 300; *McCune v. Wilson,* 237 So.2d 169 (Fla.1970); *Grempler v. Multiple Listing Bureau, Inc.,* 266 A.2d 1, 258 Md. 419 (1970); *Kurk v. Medical Society of County of Queens, Inc.,* 18 N.Y.2d 928, 276 N.Y.S.2d 928, 276 N.Y.S.2d 1007, 223 N.E.2d 499 (1966); *Kronen v. Pacific Coast Society of Orthodontists,* 46 Cal. Rptr. 808, 237 Cal.App.2d 289 (1965), certiorari denied, 384 U.S. 905, 86 S.Ct. 1340, 16 L.Ed.2d 358; *Virgin v. American College of Surgeons,* 42 Ill.App.2d 352, 192 N.E.2d 414 (1963); *Falcone v. Middlesex County Medical Society,* 170 A.2d 791, 34 N.J. 582 (1961); *Werner v. International Association of Machinists,* 11 Ill.App.2d 258, 137 N.E.2d 100 (1956).

This Court's discussion in *Rosee* supports the notion that a challenge to an exchange's membership decision is a matter of state law. 311 F.2d at 527.[14] The above Congressional statements regarding § 8c refer only to the preservation of existing judicial remedies or rights and simply do not indicate an intent to create a federal implied cause of action based on §§ 5a(8) and 8c regarding exchange membership decisions and disciplinary proceedings. Nor does consideration of the other *Cort* factors relevant to Congressional intent, such as identity of the class for whose benefit the statute was enacted, the overall legislative scheme, and the traditional role of the state in providing relief, see *supra* note 10, lead to the conclusion that an implied remedy exists to allow plaintiff's claim.

Finally, the *Korach* case does not bar our holding on the implied cause of action issue. In *Korach* the district court granted summary judgment for the defendant Chicago Mercantile Exchange on plaintiff's complaint which was "phrased in terms of breach of contract and negligence" and which charged the exchange with a failure to apply standards of "procedural due process inherent in the exchange's rules and the provisions of the Commodity Exchange Act." 747 F.2d at 415. We affirmed the summary judgment on the ground that plaintiff had not shown the requisite bad faith or violation of rules and regulations governing the exchange and additionally noted the collateral estoppel effects of the CFTC review on the merits of Korach's case. *Id.* at 415–16; see *supra* note 4. The Court never considered whether a federal implied cause of action existed under the CEA nor was the issue argued to the Court (Appellee's Brief at 16 (Defendant argued that no claim was stated under Illinois law) and Reply Brief at 16 (Plaintiff admitted exchange "in-house fights" do not involve federal law), *Korach, supra* ). To the extent the Court's hearing the claim on the merits indicates an implicit finding of

14. In *P.J. Taggares Co. v. New York Mercantile Exchange,* 476 F.Supp. 72, 75 (S.D.N.Y.1979), the court was faced with a claim that a New York Mercantile Exchange action constituted a "denial of access" in contravention of the procedures provided in § 8c(1), 7 U.S.C. § 12c(1), of the CEA. The *Taggares* court merely ruled that the challenged exchange action, an increased margin requirement, did not constitute a "denial of access" under § 8c(1). *Id.* at 75.

subject matter jurisdiction over the case, it must be noted that Korach's complaint "in substance" raised a "procedural due process" claim over which the court would possess jurisdiction. 747 F.2d at 415. Additionally we note that the district court in *Korach* stated that jurisdiction was based on 28 U.S.C. § 1332, diversity of citizenship. *Korach v. Chicago Mercantile Exchange*, No. 81 C 3172 (N.D.Ill. June 20, 1983). We hold that no implied private cause of action exists in the present case to permit plaintiff's claim.[15]

The decision of the district court is affirmed.[16]

---

**15.** In view of our holding we do not address the time of accrual and statute of limitations issues. Any pendent claim of plaintiff under state law is controlled by the Circuit Court of Cook County's dismissal of Cardoza's claim based on Illinois law's refusal to adjudicate CBOT membership disputes (R. Item 7(1)). See *Rosee*, 311 F.2d at 527; *Board of Trade of City of Chicago v. Nelson*, 162 Ill. 431, 44 N.E. 743, 745 (1896).

**16.** We note our disagreement with the rulings of the district court in the *Korach* case, see 747 F.2d at 415, and the Circuit Court of Cook County in Cardoza's state court action, *Cardoza v. Board of Trade*, No. 83 L 50312 (May 29, 1983) (R. Item 7(a)), that the doctrine of federal preemption bars any state law action challenging any exchange membership decision or disciplinary proceeding.

Any inquiry into the issue of preemption under the Supremacy Clause must begin with the "basic assumption" that by enacting legislation "Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576. A Congressional purpose to displace state law may be inferred from a federal act and its consequences, *Maryland*, 451 U.S. at 746, 101 S.Ct. at 2128, but here the legislative history of § 8c, examined *supra* p. 1549, indicates Congressional intent to permit state law relief for a person aggrieved by an exchange membership decision or denial of access apart from the limited CFTC appeal procedure set forth in § 8c. Furthermore, the existence of a hypothetical or potential conflict with federal law does not warrant a finding of federal preemption. *Rice v. Norman Williams Co.*, 458 U.S. 654, 664, 102 S.Ct. 3294, 3301, 73 L.Ed.2d 1042. Under the circumstances of this case, where the CFTC has refused to review a disciplinary action prior to plaintiff's filing suit in state court, there is only a limited potential for conflict. We distinguish the case involving a denial of access or disciplinary proceeding based upon a person's manipulation or fraudulent activity related to commodity trading itself. See *supra* n. 12.

Also to be distinguished is the Illinois decision of *Buckley v. Chicago Board of Options Exchange, Inc.*, 109 Ill.App.3d 462, 65 Ill.Dec. 59, 440 N.E.2d 914, which held that state court action for specific performance with respect to relief from a disciplinary sanction entered by the Chicago Board of Options Exchange was preempted by the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* Unlike the present case, under the Securities and Exchange Act and its regulations Securities Exchange Commission review of exchange disciplinary actions is mandatory, 65 Ill.Dec. at 63–64, 440 N.E.2d at 918–19 (15 U.S.C. § 78s(d); 17 C.F.R. § 240–19(d)–(1)(e) (1981)), placing such review exclusively within the federal domain.